Chicago Housing Authority, a Municipal Corporation of Illinois for the Use of General Bronze Corporation, a New York Corporation, Plaintiff-Appellee, v. United States Fidelity and Guaranty Company, a Maryland Corporation, Defendant-Appellant.
Chicago Housing Authority, a Municipal Corporation of Illinois for the Use of Otis Elevator Company, a New Jersey Corporation, Plaintiff-Appellee, v. United States Fidelity and Guaranty Company, a Maryland Corporation, Defendant-Appellant.

Gen. Nos. 49,201, 49,202.

First District, First Division.

May 25, 1964.

Rehearing denied June 12, 1964.

Amberg and La Bar, of Chicago (Thomas Amberg and Daniel R. La Bar, of counsel), for appellant.

Irving E. Hollobow, Laurence C. Warren, Lawrence J. Taslitz and Erwin Grombacher, all of Chicago (Irving E. Hollobow and Erwin Grombacher, of counsel),

for appellee. McLaughlin, Kinser & Bryant, of Chicago (Edward J. McLaughlin and Harry L. Kinser, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

These two appeals while involving different plaintiffs turn upon the same general issues, were heard together at the trial court level and will be decided by one opinion in this court.

The two plaintiffs involved in this case furnished labor and materials to Sumner Sollitt Company, the prime contractor, under its contract with the Chicago Housing Authority for the construction of a public housing project in the City of Chicago known as Clarence Darrow Homes. Both actions were brought in the name of Chicago Housing Authority against Sumner Sollitt as principal and United States Fidelity and Guaranty Company as surety on the contractor's performance and payment bond executed between the parties. In case number 49201, General Bronze Corporation, plaintiff subcontractor, brought action to recover the sum of $26,076.90 for installing windows and screens. In case number 49202, Otis Elevator made claim for $26,544.45 for the installation of elevators. On January 2, 1963, summary judgments were entered in favor of plaintiffs and against Sumner Sollitt Company for the full amount of the respective claims. No appeal was taken by Sollitt. The defendant, United States Fidelity and Guaranty Company, appeals from an order entered on March 1, 1963, denying its motion for judgment on the pleadings, sustaining summary judgments in favor of both plaintiffs and entering judgments against it for the respective claimed amounts.

██ The defendant's theory is (a) that the performance and payment bond, which is the subject of

these actions, is a statutory bond given pursuant to the requirements of §§ 15 and 16 of chapter 29, Illinois Revised Statutes; that the suits were not commenced within six months after the acceptance of the project or work as required by said statute so that the actions are barred; (b) in the alternative that the question as to whether the project or work was accepted, and if so, then when it was accepted, is a genuine issue of fact raised by the pleadings, so that the court erred in entering summary judgment against the defendant.

Section 15 of ch 29 entitled "bond required" provides that any political subdivision of the State (as in this case the Chicago Housing Authority) in making contracts for public work must require the contractor to supply a bond ". . . and such bond, among other conditions, shall be conditioned for the payment of material, used in such work and for all labor performed in such work, whether by subcontractor or otherwise . . ."

Section 16 entitled "Recovery on bond—Notice of claim—Limitation," gives certain persons (including subcontractors) the right to sue on such a bond in the name of the political subdivision entering into the contract and, in part, recites:

> Provided, further, that no actions shall be brought until the expiration of one hundred and twenty (120) days after the date of the last item of work or the furnishing of the last item of materials, except in cases where the final settlements between the officer, board, bureau or department of municipal corporation and the contractor shall have been made prior to the expiration of the one hundred and twenty (120) day period, in which case action may be taken immediately following such final settlement; nor shall any ac-

409

tion of any kind be brought later than six (6) months after the acceptance by the State or political subdivision thereof of the building project or work. . . .

The Performance and Payment Bond does not contain any time limitations for bringing suit as required under § 16 and in fact the bond makes no reference to the statute whatsoever. We agree with the defendant that the established law in this state is that the provisions of the applicable statute will be read in a statutory bond. In the case of People v. G. H. Cross Co., 361 Ill 405, 198 NE 356, the Illinois Supreme Court said on p 419: "[a] statute requiring a bond constitutes a part of the bond, and it must be assumed that the bond is executed with reference to the provisions of the statute." Also see Davis v. Moore, 7 Ill App2d 519, 130 NE2d 117.

It is conceded that due to Sumner Sollitt's failure to make payment, United States Fidelity and Guaranty Company was liable to the plaintiffs for payments under the bond. The principal issue is whether the actions brought by the respective plaintiffs were commenced "later than six months after the acceptance by the state or political subdivison thereof of the building project or work." This question leads us to a careful examination of the purpose and effect of §§ 15 and 16 upon the case at bar.

The purpose of §§ 15 and 16 is remedial and these sections are intended to protect subcontractors and materialmen for whom no right of mechanic's lien exists against a public body. Therefore the sections should be read together in order to get the true intent of the legislature. It has also been held that these sections should be construed liberally in order to effectuate their remedial legislative purpose. Board of Education v. Pacific Nat. Fire Ins. Co., 19 Ill App2d 290,

410

153 NE2d 498. The statute specifies a six-month period after acceptance by the public body as the time in which suit must be brought. It does not, however, define the term "acceptance." Parties either intentionally or through inadvertence may leave it to the courts after a lawsuit has developed, to determine from the facts of the case when the project was accepted. A wiser decision motivated by a desire to insure certainty of result would be for the parties to determine by contract the manner in which the state or political subdivision will give its acceptance of the project and thus cause the six-month period to run.

Although the performance and payment bond executed between the defendants does not contain any specifications as to how the project was to be accepted, the contract between Sumner Sollitt Company and the Chicago Housing Authority, which was made a part of the bond, does contain a provision which sets out in detail the machinery for "acceptance." Section 61 of the general conditions of the contract is entitled, "Partial Occupancy and Final Acceptance"; the relevant portion thereof is as follows:

> "b. As hereinbefore stated, the 'Memorandum of Acceptance for Partial Occupancy' shall constitute the final acceptance of the work enumerated therein and the guarantee period shall begin at the time and date of said Memorandum. Upon subsequent final completion of the work, the entire Project shall be inspected by the Representatives of the Chicago Housing Authority and the Contractor and, if then found acceptable, the Chicago Housing Authority will so inform the Contractor in a Memorandum of Final Acceptance. The general guaranty period called for under this Contract shall begin to run at the date and hour stated in the Memorandum of Final Acceptance

411

for that portion of the work completed subsequently to the date of the Memorandum of Acceptance for Partial Occupancy.

(1) The Memorandum of Final Acceptance shall include the following:

(a) Date and hour at which the completed Project will be accepted by the Chicago Housing Authority.

(b) Scope of the work finally completed and accepted.

(c) Any exceptions specifically noted and the method of adjustment therefor, including change in the Contract Price, if any, as mutually agreed between the Contracting Parties."

The defendant conceded that no instrument entitled "Memorandum of Final Acceptance" was ever issued, but argues that such a document so labeled is immaterial since there are other written instruments which substantially and sufficiently satisfied the requirements of sec 61.

The pleadings reveal that the Chicago Housing Authority issued to Sumner Sollitt Company written instruments entitled "Memorandum of Acceptance for Occupancy" as each of the five buildings were ready for occupancy and use. The defendant provides us with the following chart summarizing these memoranda.

| No. | Effective Date of Acceptance | Portion of Project Accepted |
|---|---|---|
| 1 | August 8, 1960 | New project Garage located at the N.E. corner of 37th and Vincennes Avenue as shown on Sheets SP–1, U–1, |

412

| No. | Effective Date of Acceptance | Portion of Project Accepted |
|---|---|---|
| | | A–125, M–101 and E–105 of the Contract Plans. (Abst. 18.) |
| 2 | January 23, 1961 | Building No. ZZ–2 containing 120 dwelling units located at 706 East Pershing Road as shown on sheet SP–1 of the Contract Plans. (Abst. 20.) |
| 3 | March 6, 1961 | Building No. ZZ–1 containing 120 dwelling units located at 730 East Pershing Road as shown on sheet SP–1 of the Contract Plans. (Abst. 22.) |
| 4 | March 27, 1961 | Building No. ZZ–3 containing 120 dwelling units located at 3933 South Langley Avenue as shown on sheet SP–1 of the contract plans. (Abst. 25.) |
| 5 | May 10, 1961 | Building No. ZZ–4 containing 120 dwelling units located at 727 East 38th Street as shown on sheet SP–1 of the contract plans. |

All curbing, walks, fences, other site surfacing and all other surface improvements apart from the buildings that are a part of this contract.

Also, all high pressure and low pressure underground

413

| No. | Effective Date of Acceptance | Portion of Project Accepted |
|---|---|---|
| | | steam and condensate return piping outside of all buildings, including all steam manholes, etc. (Abst. 28.) |

With the memoranda for each of the aforementioned portions of the project there was attached the following statements:

"The contractor will be relieved of responsibility for performing further work or supplying further materials, equipment or other items in accordance with section 2 of the Special Conditions except the following work:

"Final Punch Lists dated . . ."

"the occupancy of any building or portion of this Project by the Chicago Housing Authority shall not constitute an acceptance of any work not performed in accordance with the contract, not relieve the contractor of liability to perform any work required by by the contract, but not completed at the time of occupancy . . ."

The defendant in its brief and in oral argument stressed that the last portion of the Clarence Darrow Homes Project was completed as required on May 10, 1961. The record further shows that on July 13, 1961, the Chicago Housing issued an instrument entitled "Certificate of Completion—Part I" which certified

414

that all work and materials had been inspected and that Sumner Sollitt Company had furnished all labor, materials and services for the project. Said certificate shows that as of June 30, 1961, all work covered by the contract originally required to be completed on June 2, 1961, was actually completed on May 8, 1961; and the only other work still to be performed was indicated by the following two change orders:

| Change Item | Change Order | Description | Debit | Credit |
|---|---|---|---|---|
| 15 | G–20 | Revise garbage chutes and masonry | | $1963.92 |
| 41 & 42 | G–30 | Revise site plan SP–I and add 10″ V. T. across play area | $3502.29 | |

The defendant argues that the effect of these documents is that of "Final Acceptance" by the Chicago Housing Authority on May 10, 1961, or in any event on July 13, 1961. We do not agree. We are of the opinion that the subcontractors under the contract had a right to rely on the contract provisions which stated that the project or work was to be accepted by the issuance of a "Memorandum of Final Acceptance."

On November 3, 1961, the Chicago Housing issued a Certificate of Completion—Part II in connection with the project. In this verified statement it is certified that all claims and exceptions theretofore listed had been disposed of and listed the disposition of the exceptions enumerated in Part I. The defendant characterizes this certificate as mere debit and credit. In our opinion it could be argued with equal force, but no more persuasion, that Part II constituted a form of "Final Acceptance." The necessary complexity of defendant's argument, that is, his search among the available documents for something which is arguably a "Memorandum of Final Acceptance" accentuates the need for the provision in the contract which specifically

415

provided that "upon subsequent final completion of the work, the entire Project shall be inspected by the Representatives of the Chicago Housing Authority and, if then found acceptable, *the Chicago Housing Authority will so inform the Contractor in a Memorandum of Final Acceptance."* (Emphasis supplied.)

If the defendant surety was satisfied from the documents issued on May 10th and July 13th, that the entire project was completed it would have been an easy matter for them to take such steps as were necessary to have the Chicago Housing Authority issue a Memorandum of Final Acceptance. This was not done nor was such a document ever issued. Under the statute if plaintiffs filed a suit within one hundred and twenty (120) days after the May 10th or July 13th dates, they might have been confronted with the assertion by defendant that the actions were premature.

The defendant urges that we hold that the legal effect of an instrument is not to be determined by the label it bears and cites Bonde v. Weber, 6 Ill2d 365, 128 NE2d 883 and to the same effect Illinois Central R. Co. v. Michigan Central R. Co., 18 Ill App2d 462, 152 NE2d 627. Although the principle suggested is a valid one these cases are readily distinguishable from the factual situation in the case at bar. In Bonde the court was confronted with the interpretation of language in an assignment agreement which referred to the assignment of a "lease" and "option." Had these words been given their ordinary meaning the transfer would have been ineffective. The court, however, said that since all parties were aware of the purpose and purported effect of the transfer, the intention of the parties where so clearly indicated would control. In the Illinois Central case the court, citing the Bonde case, found that an instrument which contained phrases consistent with either a lease or a contract for the use of joint facilities could best be charac-

416

terized as the latter. This case and others cited by the defendant stand for the proposition that the practical construction placed upon the instrument by the parties themselves will be followed by the court. These cases involved ambiguous and doubtful terms. The contract and the bond involved in the instant case are not ambiguous or uncertain and the subcontractor had a legal right to rely on the specific language in the contract. We hold that it would be inequitable to engage with the defendant in an exercise in conjecture as to which interim instrument (showing on its face that more work was to be done) shall be adjudged a proper substitute for a contractually well defined "Memorandum of Final Acceptance."

It is also the position of the defendant that the trial court erred in determining that there was no genuine issue of any material fact. The defendant in its motion for judgment on the pleadings joined the plaintiff on the theory that only legal questions were involved. We are satisfied in view of our findings that there is no genuine issue of fact requiring a trial.

For the reasons stated the judgment is affirmed.

Affirmed.

MURPHY, P. J. and KLUCZYNSKI, J., concur.