The Housing Authority of the County of Franklin, Illinois, for the Use and Benefit of the Smith-Alsop Paint and Varnish Co., Inc., Plaintiff, v. Joseph Holtzman, et al., Defendants,

and

The Smith-Alsop Paint and Varnish Co., Inc., a Corporation, Plaintiff, v. The Housing Authority of the County of Franklin, Illinois, et al., Defendants.

Gen. No. 68–138.

Fifth District.

February 17, 1970.

Rehearing denied March 25, 1970.

Dix, Dix, Patrick, Ratcliffe & Adamson, of Terre Haute, Indiana, and Trobaugh and Brondos, of West Frankfort, for appellant.

Robert S. Hill, of Benton, for Holtzman & Silverman and Insurance Company of North America, appellees.

EBERSPACHER, J.

The plaintiff, the Smith-Alsop Paint and Varnish Company, Inc.; appeals from a decree entered by the Circuit Court of Franklin County. The original suit, as well as this appeal, involves the consolidation of two separate actions. The first suit was filed by the plaintiff hereinafter referred to as Smith-Alsop, pursuant to the provisions of chapter 82, section 23, demanding a lien upon the funds due Holtzman & Silverman, a copartnership from the Housing Authority of Franklin County. The second suit was filed pursuant to the provisions of chapter 29, sections 15 and 16, Ill Rev Stats 1965, demanding relief from Holtzman & Silverman as principal and the Insurance Company of North America as surety upon a performance and payment bond. Relief was also asked against Harold Kennedy, Roy Kennedy and John Boyd, doing business as Kennedy Painting and Decorating Service as the direct recipient under contract with the plaintiff on materials used upon a public building project in West Frankfort, Illinois.

The two causes were consolidated for trial. After a trial with the court sitting without a jury, the Court entered judgment against the plaintiff in each of the law and chancery proceedings insofar as relief was sought against the defendants, Holtzman & Silverman and the Insurance Company of North America, and allowed plaintiff recovery against the Kennedy firm. The plaintiff, Smith-Alsop has appealed from the judgment.

The plaintiff has presented two issues to this Court for review. The first is whether the judgment of the

trial court was contrary to the law and the evidence in failing to give the plaintiff a lien upon public funds under section 23, chapter 82, and second whether the judgment of the trial court is contrary to the law and the evidence in failing to allow recovery on the payment bond pursuant to sections 15 and 16 of chapter 29.

The facts as may be gleaned from the record are as follows: On October 1, 1963, Holtzman & Silverman, a partnership, as "Contractor," entered into a contract for complete construction with the Housing Authority of the County of Franklin, as "Local Authority." The contract between the "Contractor" and the "Local Authority" provided that the "Contractor" would furnish to the "Local Authority" a performance and payment bond as security for the faithful performance of the contract and for the payment of all persons, firms or corporations to whom the Contractor may become legally indebted.

Pursuant to the contract of October 1, 1963, Holtzman & Silverman delivered to the Local Authority a Performance and Payment Bond executed on October 1, 1963, wherein Holtzman & Silverman, was principal, and the Insurance Company of North America, was surety.

On January 16, 1964, Holtzman & Silverman, as Prime Contractor, entered into a contract with Kennedy Painting & Decorating Service, as Subcontractor. Under that contract the Subcontractor agreed to furnish all labor, material, equipment and services to complete work under section II for the construction of Project Ill. 61–1 for the Housing Authority of the County of Franklin. Under the Contract the Subcontractor was to do two things: (1) furnish the sheetrock and necessary labor for its installation, and (2) furnish all the paint required and the necessary labor for the application of that paint. The total contract price was $149,000, which was divided as $87,500 for the sheetrock and installation and $61,500 for the paint and its application.

On January 28, 1964, an agreement was entered into between the West Frankfort Paint & Wallpaper Store and Harold Kennedy, Kennedy Painting and Drywall Co., whereby the West Frankfort Paint & Wallpaper Store agreed to furnish and Kennedy to use Smith-Alsop Paint and Varnish products on the Public Housing Project Ill. 61-1 in West Frankfort, Illinois. Plaintiff, Smith-Alsop, is an Indiana Corporation authorized to do business in Illinois and it operates a store in West Frankfort, Illinois, under the trade name of West Frankfort Paint and Wallpaper Store. Pursuant to this agreement the plaintiff supplied to Kennedy paint and other necessary materials for use on Project Ill. 61-1. The plaintiff supplied paint and materials to Kennedy for which money is claimed owing from January 29, 1964, to September 30, 1964. It was stipulated at trial that Kennedy last performed work on Project Ill. 61-1 on October 12, 1964, at which time his contract was terminated by Holtzman & Silverman.

It also appears from the record that on April 30, 1964, the plaintiff furnished a statement to the Housing Authority that all materials furnished to Kennedy for use on the project were paid up to date as of April 30, 1964.

The date on which the last materials used on Project Ill. 61-1 were actually charged against the Kennedy account was on September 30, 1964. The amount of the balance on that date was $8,333.79.

The materials furnished by plaintiff to Kennedy for use on Project Ill. 61-1, the value of which remains unpaid, included paint which was consumed and became part of the Project Ill. 61-1 and materials used in the prosecution of the work which did not become a constituent part of the Project Ill. 61-1. The latter materials included paint brushes, scrapers, paint buckets, sandpaper, and other like items which did not become part of the project, these materials were wholly consumed in

the prosecution of the work on the Project and were thereby rendered useless.

After Kennedy was terminated from Project Ill. 61–1 under his Contract, Holtzman & Silverman relet the Contract to Marvin Ferguson. Under that contract Ferguson completed all of the painting and drywall on the Project. The contract with Ferguson was in the amount of $31,885. For the work performed Kennedy received payment in the amount of $98,897.98. There was, therefore, a total cost of $130,782.98 to Holtzman & Silverman for the work that had been originally contracted at $149,000. Kennedy, apparently, did not seek additional payment after default.

The plaintiff contends that the judgment of the trial court was contrary to the law and the evidence in failing to give the plaintiff a lien upon the funds held by the Housing Authority under section 23, chapter 82.

The defendants assert that the lien of the plaintiff is limited to the amount due Kennedy from Holtzman & Silverman at the time the notices of the liens were given. The defendants further assert that Kennedy's Contract had been properly terminated by Holtzman & Silverman and that there was no credible proof that any balance was due to Kennedy.

The limitation of the suppliers' lien has been concluded in Koenig v. McCarthy Const. Co., Inc., 344 Ill App 93, 100 NE2d 338. The Court stating in words that are appropriate to the facts of this immediate case.

> "It is our judgment, therefore, that inasmuch as sec 23 of the Lien Act has been construed by our Supreme Court in the Gunther case, supra, to limit the liens of those furnishing materials to a contractor for a public improvement, to the amount earned and due to the contractor prior to his default, and since this section expressly provides that the term 'contractor' includes any 'subcontractor,' it is

both reasonable and proper to conclude that persons, in the position of plaintiff, furnishing materials to a subcontractor, have no greater rights than persons furnishing materials to a contractor, and both are limited, in the assertion of liens, *to the amount due their immediate contractors* at *the time notice of their liens is given.* Any other construction would not only impose an absolute liability upon the original contractor not contemplated by the statute, but be contrary to established principles of law with reference to liens accruing under private contracts."

■ The plaintiff in this cause was the supplier of material to a subcontractor to the contractor for a public improvement and is thus entitled to a lien under section 23, chapter 82 upon those monies due to the subcontractor from the contractor. See ILP, Mechanics' Liens, § 67. There being no showing of any monies due to the subcontractor the decision of the trial court denying recovery on the statutory lien theory should be affirmed. Koenig v. McCarthy Const. Co., supra, Tison & Hall Concrete Products Co. v. A. E. Asher, Inc., 86 Ill App2d 34, 229 NE2d 137.

■ ■ Plaintiffs urge that since there is an $18,217.02 difference between the cost for painting and drywalling under the $149,000 Kennedy Contract and the amount actually paid the Kennedy firm ($98,897.98) and Ferguson ($31,885) for the same work, that the reasoning of the Supreme Court in Gunther v. O'Brien Bros. Const. Co., 369 Ill 362, 16 NE2d 890, supports plaintiff's recovery from what plaintiff contends is a windfall to the contractor, and allows the contractor to profit by reason of the default of the subcontractor. The Koenig court rejected such an interpretation of Gunther and pointed out that section 23 of the Lien Act should not be interpreted in such manner as to impose a limitless liability upon the original contractor to make the original con-

tractor "liable for all the financial follies and excessive contracts entered into by his subcontractors." That the contractor may profit in this case by reason of Kennedy's lack of substantial performance is not persuasive enough for us to impose a different rule than we imposed in the Tyson case, supra, particularly in view of the fact that the default of a subcontractor might also result in additional costs to the contractor. That the contractor could protect himself by requiring a performance bond from the subcontractor is likewise not persuasive, since plaintiff as supplier could likewise have required such assurance from either the subcontractor whom he supplied or from the contractor, or kept himself informed of the subcontractor's ability to pay for the materials furnished.

The plaintiff further contends that the judgment of the trial court was contrary to the law and the evidence in failing to allow recovery on the bond pursuant to sections 15 and 16, chapter 29. The pertinent parts of the statute (which we refer to as the Bond for Public Works Act) are as follows:

Section 15, chapter 29, Ill Rev Stats—1963:

"All officials, boards, commissions or agents of this State, or of any political subdivision thereof in making contracts for public work of any kind to be performed for the State, or a political subdivision thereof shall require every contractor for such work to furnish, supply and deliver a bond to the State, or to the political subdivision thereof entering into such contract, as the case may be, with good and sufficient sureties, and in an amount to be fixed by said officials, boards, commissions, commissioners or agents, and such bond, among other conditions, shall be conditioned for the payment of material used in such work, whether by subcontractor or otherwise.

234

"Each such bond is deemed to contain the following provisions whether such provisions are inserted in such bond or not:

" 'The principal and sureties on this bond agree that all the undertakings, covenants, terms, conditions and agreements of the contract or contracts entered into between the principal and the State or any political subdivision thereof will be performed and fulfilled and to pay all persons, firms and corporations having contracts with the principal or with the subcontractors, all just claims due them under the provisions of such contracts for labor performed or materials furnished in the performance of the contract on account of which this bond is given, when such claims are not satisfied out of the contract price of the contract on account of which this bond is given, after final settlement between the officer, board, commission or agent of the State or of any political subdivision thereof and the principal has been made.' "

. . . . . .

Section 16, chapter 29, Ill Rev Stats—1963:

"Every person furnishing material or performing labor, either as an individual or as a sub-contractor for any contractor, with the State, or a political subdivision thereof where bond shall be executed as provided in this Act, shall have the right to sue on such bond in the name of the State, or the political subdivision thereof entering into such contract, as the case may be, for his use and benefit, . . . ."

Plaintiff urges that the statute gives to the subcontractor's supplier a right to sue upon the bond given by the contractor to the Housing Authority, pointing out that both Fodge v. Board of Education, 309 Ill App 109,

235

32 NE2d 650, and Board of Education v. Pacific Nat. Fire Ins., 19 Ill App2d 290, 153 NE2d 498, commented upon the purpose of those sections. In the later the Court said at 19 Ill App2d, p 299, 153 NE2d, pp 503, 504:

> "It is not disputed that paragraphs 15 and 16 (of Chapter 29) are remedial and were intended to protect subcontractors and materialmen for whom no right of mechanic's lien exists against a public work. This being so, these paragraphs shall be read together in order to get the true intent of the legislature. Remedial statutes must be construed liberally, and it will be presumed that the legislature did not intend the law to work a hardship or an injustice."

Both cases involve parties that contracted directly with the contractor and thus cannot be said to be authority for the proposition that a supplier of a subcontractor is entitled to recover from the contractor and his surety on the bond.

In an annotation found in 92 ALR2d 1250, p 1255, it is stated that the rule "to the effect that a claim for labor or materials furnished to a subcontractor is within the coverage of a bond given by the principal contractor for the construction of a public improvement, pursuant to statutory requirement, to secure payment for the labor and materials employed or used in the performance of the contract" is supported by the great weight of the later decisions, and by footnote 5 includes Illinois, citing Board of Education v. Aetna Casualty & Surety Co., 305 Ill App 246, 27 NE2d 337. Examination of that case discloses that in that case a plaintiff who had sublet a part of the carpentry from the carpentry subcontractor was allowed to recover from the contractor and his surety on the bond but the statutory bond is not mentioned in the opinion, the statute is not mentioned or construed, and the case has never been cited in Illinois. We conclude that case was determined on a construction of the

236

bond itself. It is significant too, that there the court noted the contractor had paid the full amount due on the carpentry subcontractor's contract "but neither counsel make any argument as to the effect of this."

██ In addition to its contention that it should recover under a proper interpretation of the Bond for Public Works Act, plaintiff also contends that here the actual bond which provided that the contractor was to satisfy "all claims arising out of the prosecution of the work under the contract" and that they would make "full payment to all persons supplying labor, services, materials or equipment in the prosecution of the work under the contract." As a result, he urges that this case should be controlled by the opinion in State Toll Highway Commission v. Boyle & Co., 38 Ill App2d 38, 186 NE2d 390. In that case the bond itself and the general contract were interpreted as to permit recovery on the bond for a plaintiff who under a conditional sale contract had furnished equipment used on the work to the subcontractor. There the Court specifically pointed out that they were not attempting to interpret or construe the Bond for Public Works Act and at 38 Ill App2d 51, 186 NE2d 396, said:

> "In this opinion we are not attempting to interpret or construe the statute. Once the principals and sureties have given a bond which satisfies the minimum requirements provided for in the statute the statute in a sense becomes functus officio. There is nothing to prevent the parties from entering into a contract and bond which go far beyond the statutory provisions, where they are entered into by parties competent to contract and they are not prohibited by law. The rights of the plaintiff here depend upon the meaning of the contract and bond. The statutory provisions concerning mechanic's liens are not controlling in the present case."

We cannot say that the above quoted language from the bond goes beyond the statutory provisions which are by section 15 incorporated into the bond. Furthermore, the contract itself required the bond, and made no reference to suppliers of subcontractors and although it permits the contractor to subcontract it provides "whenever used in any of the contract documents . . . , the 'contract' means the Contract extended by the Local Authority and the Contractor, of which these conditions form a part. The documents which comprise the contract are set forth in the contract form." Among the documents set forth in the contract form is the bond. It is therefore evident that the parties intended that the contractor and its surety would be bound to pay only for material supplied to the contractor. The contract might have contained a specific provision obligating the contractor or its surety to pay for materials furnished a subcontractor, but it did not.

■ As a result, we are called upon to determine whether liability is imposed upon the bond in the case at hand by reason of the plain language of the Bond for Public Works Act, c 29, §§ 15, 16, Ill Rev Stats 1963. Defendants urge that the supplier of a subcontractor is not such a person as is defined in the Act pointing out that § 16 of the Act appears to be limited to those furnishing material "either as an individual or as a subcontractor *for any contractor* with the State or a political subdivision thereof" and that plaintiff did not furnish materials to any contractor with the political subdivision, but furnished them only to the Kennedy firm whose contract was with the contractor. As has been pointed out the two sections must be read together, Board of Education v. Pacific Nat. Fire Ins., supra, and the language of § 15 which is by statute made a part of the bond, provides for the payment of all persons "having contracts with the principal or subcontractors, all just claims due them under the provisions of such contracts." Here the plaintiff had a contract with the subcontractor; that plaintiff

238

had a just claim is evidenced by the judgment allowed plaintiff against the Kennedys.

Defendants point out that to interpret the Bond for Public Works Act as providing recovery on the bond could mean that the contractor would have liabilities limited only by the amount of his bond for indebtedness his subcontractors might incur under the guise of performing their contracts and the contractor could be liable even beyond the liability which he had on the subcontracts and could not protect himself by requiring bonds from his subcontractors, which the law does not require him to do. Such liability limited only by the amount of his bond could mean that the contractor could be deprived of any remuneration for his services and any profit, by the subcontractors incurring indebtedness equal to or exceeding his bond. In the present case such harsh result would not be reached. The contractor was fortunate enough to get the painting and sheetrocking done for less than was anticipated by the Kennedy subcontract, and the amount demanded has been brought into court by the Housing Authority. There is nothing in the record to indicate that the amounts paid by the contractor to the Kennedys and to Kennedys' employees was paid on reliance of the statement plaintiff furnished the Housing Authority on April 30, 1964.

██ We note that at the time the Legislature enacted the Bond for Public Works Act (1931), a supplier of a subcontractor had no lien against public funds under section 23 of the Lien Act; that it was not until 1935 that the Lien Act was amended to permit such supplier any lien. See 26 ILP, Mechanics' Liens, § 67, and c 82, § 23, Ill Anno Stats Historical note. The Bond for Public Works Act has been amended on numerous occasions since 1935, and we therefore conclude that the Legislative intent was to provide a remedy in addition to the remedy provided by the Lien Act. The plain language of § 15 of the Bond for Public Works Act includes a supplier of a

subcontractor; obviously the Legislature did not intend by § 16 to deny such a supplier the remedy provided for the right which they spelled out in § 15. Under the circumstances here present we conclude that a supplier of a subcontractor is such party as was intended to be included in the Bond for Public Works Act. That such holding might, on a different factual situation, be harsh or increase the contractual cost of public buildings, would be properly addressed to the Legislature. It is of little persuasion in this case.

The language of the Bond for Public Works Act states no limitation of liability on the contractor or his surety other than the amount of the bond. Defendants urge that if the Bond for Public Works Act is interpreted to include suppliers of subcontractors, the court should impose the limitation of the amount due the subcontractor, as Courts have imposed in the proceedings under the Lien Act. We do not consider that there is sufficient similarity in either the purpose or the language of the two Acts to here impose such liability on a recovery under the Bond for Public Works Act. In view of the broad language of the Bond for Public Works Act, if such limitation on liability is to be imposed on this factual situation, it is the proper function of the Legislature to amend the Act to impose it, rather than that of this Court.

█ Defendants further contend that even if these plaintiffs are entitled to proceed under the Bond for Public Works Act, they have not met the conditions of liability imposed by § 16. It provides that a person claiming "shall have no such right of action unless" he files his verified notice of claim within 180 days after furnishing the last item of materials, and "that no action shall be brought until the expiration of 120 days after the date of . . . the furnishing of the last item of materials except in cases where final settlement between" the Housing Authority and the contractor shall have been made prior to the expiration of the 120-day period.

240

These contentions are resolved by the pleadings in which plaintiff alleged and defendants admitted the timeliness of the notice and commencement of the action. See Hudson v. Augustines, Inc., 72 Ill App2d 225, 234–5, 218 NE2d 510, 515. Furthermore, the trial court has made no finding of failure to meet the conditions of the Act, nor is prejudice shown (see § 16), nor does the record support defendants' contention assuming such affirmative defense could stand in the face of the admissions found in the answers.

■■■■ Defendants have also contended that the Housing Authority is not a political subdivision under the Bond for Public Works Act. We do not agree. Also see Chicago Housing Authority v. United States Fidelity & Guaranty Co., 49 Ill App2d 407, 409, 199 NE2d 217. The purpose of the Bond for Public Works Act is obviously to protect those who furnish labor or materials on public works as well as protect the tax money allotted for public works. It cannot be contended that a housing project built at public expense is not a public work.

■■■ In the present case we find an honest difference of opinion as to whether plaintiff can recover from these defendants. The record does not show any unreasonable and vexatious delay in defendants' failure to pay plaintiff. As a result plaintiff is not entitled to interest on any recovery from these defendants.

We therefore reverse the judgment in the consolidated action and remand the cause for entry of a judgment consistent with this opinion.

Judgment reversed, cause remanded.

MORAN and GOLDENHERSH, JJ., concur.