INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT LODGE NO. 140, *et al.,* Plaintiffs-Appellants, *v.* CHESHIRE/A XEROX COMPANY *et al.,* Defendants-Appellees.

Second District   No. 2—83—0556

Opinion filed June 27, 1984.

James D. Goodman, of Chicago, for appellants.

Gerard C. Smetana and Gary L. Starkman, both of Arvey, Hodes, Costello and Burman, of Chicago, for appellees.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff-union's complaint to compel arbitration (Ill. Rev. Stat. 1981, ch. 10, par. 102) was dismissed by the circuit court of Lake County and the parties' cross-motions for summary judgment were denied. Because the dispute giving rise to the complaint was arbitrable, we reverse and remand for an order granting the relief sought in the complaint.

On January 13, 1983, plaintiffs, International Association of Machinists and Aerospace Workers, District Lodge No. 140, James D. Feight, Ray Holland, David Rumpf and Charles Dalbke (hereinafter union), filed a complaint which sought to enjoin defendants, Cheshire/A Xerox Company and Xerox Corporation (hereinafter company), from refusing to participate in arbitration pursuant to a collective bargaining agreement between the parties. The union alleged that a controversy had arisen out of that agreement, to wit:

> "The company notified the union that the finished design of the Ferret Machine has been released to be manufactured in Hot Springs, ARkansas [sic], a right to work state; thereby, depriving Bargaining Unit Employees of work normally performed by them. Such work loss is greatly magnified by already loss [sic] of the machine shop and wire harness work. This methof [sic] of discriminating against the union substantially jeopardizes the status and integrity of the Bargaining unit. This is a violation of the current Collective Bargaining Agreement in particular, Article 1 and Job Descriptions. Specific Adjustment requested: The Company manufacture the finished design of the Ferrest [sic] Machine at Cheshire of Mundelein, Illinois and make the appropriate employees whole."

It was agreed by the parties that the union requested arbitration of this controversy but that the company refused and continues to refuse to submit to arbitration.

The company filed a counterclaim and motions for dismissal of the complaint and for summary judgment on the counterclaim. The union filed motions for dismissal of the counterclaim and for summary judg-

ment on the complaint. Oral argument was made on these motions on April 26, 1983, and the trial court ruled on May 17, 1983. The court found that the Management Rights Article of the collective bargaining agreement, which gave the company the exclusive right "to introduce new or revised production methods or facilities [and] to decide the number and location of its plant and nature and extent of work to be performed therein ***," was a clear and unambiguous exclusion of the union's grievance from arbitration. The court therefore granted the company's motion to dismiss the complaint while also dismissing the company's counterclaim and denying the cross-motions for summary judgment. In its appeal, the union seeks reversal of the denial of its petition to compel arbitration and an order compelling arbitration.

■■ For clarification purposes, we first address the scope of this appeal. Because the union now seeks not only reinstatement of its complaint but also the granting of the relief sought by that complaint (*i.e.*, an order compelling arbitration), it is clear that the union appeals from the denial of its motion for summary judgment as well as from the dismissal of its complaint. While the denial of a motion for summary judgment is not ordinarily appealable, such a denial is reviewable where the case is on appeal before the appellate court from a final judgment, there has been no evidentiary hearing or trial, and the party seeking such review has not in any way prevented or avoided such hearing or trial. (*Novak v. Insurance Administration Unlimited, Inc.* (1980), 91 Ill. App. 3d 148, 414 N.E.2d 258; *Cedric Spring & Associates, Inc. v. N.E.I. Corp.* (1980), 81 Ill. App. 3d 1031, 402 N.E.2d 352.) Since the dismissal of the complaint is a final judgment properly before this court, we may also properly review the denial of the union's motion for summary judgment.

■■ The central issue of this appeal is whether the dispute between the parties is an arbitrable one. Subsection (a) of section 2 of the Uniform Arbitration Act provides as follows:

"(a) On application of a party showing an agreement described in Section 1, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied." (Ill. Rev. Stat. 1981, ch. 10, par. 102(a).)

Although the company's motion to dismiss was ostensibly a section 2—619 motion (see Ill. Rev. Stat. 1981, ch. 110, par. 2—619) for involuntary dismissal based upon certain defects or defenses, it more pre-

cisely sought the summary determination provided for in the Uniform Arbitration Act. Under that act, the trial court is authorized to determine arbitrability if one of the parties denies it has agreed to arbitrate, as the company does here. (*Lehman v. Eugene Matanky & Associates, Inc.* (1982), 107 Ill. App. 3d 985, 438 N.E.2d 614.) In granting the motion to dismiss, the trial court summarily determined that there was no agreement to arbitrate the dispute alleged.

With regard to the arbitration of dispute, the terms of the collective bargaining agreement are very broad:

> "Grievances are defined as any *alleged* violation of the terms of this Agreement or *differences of opinion* as to its interpretation, applications or *differences of opinion* arising out of conditions of employment. Should grievances, as defined above, arise, there shall be no suspension of work and all issues and disputes shall be settled promptly in the manner hereinafter outlined in this Article.

> \* \* \*

> Any grievance which is not settled may be referred to arbitration in accordance with the provisions of Section 4 of this Article." (Emphasis added.)

The complaint *alleges* a violation of the terms of the agreement. The union *alleges* that the company's decision to manufacture the Ferret Machine in Arkansas rather than Mundelein violates "Article 1 and Job Descriptions," so as to discriminate against the union. The union argues that it refers to that part of Article 1 which states:

> "It is understood that it is necessary for non-bargaining unit personnel to perform experimental and developmental work in which the subject matter is not covered by a finished design. Nothing contained in this Agreement shall be interpreted to limit or prevent the performance of assembly, adjustment or testing of experimental or prototype machines, or the performance of final inspection or check-out of machines or equipment by supervisors, engineers or other salaried employees. However, the language of the preceding sentence is not intended to infringe on *any work normally performed* by members of the bargaining unit." (Emphasis added.)

■ The arbitration clause makes arbitrable all alleged violations and differences of opinion of contract interpretation arising out of conditions of employment. The complaint makes out just such a grievance. Faced with this broad an arbitration clause, the court's function is limited to ascertaining whether the party seeking arbitration is

making a claim which on its face is governed by the contract; whether the moving party is right or wrong is a question of contract interpretation for the arbitrator and not for the courts, who have no business weighing the merits of the grievance, considering whether there is equity in the claim, or determining whether there is particular language in the agreement which will support the claims. *United Steel Workers of America v. American Manufacturing Co.* (1960), 363 U.S. 564, 568, 4 L. Ed. 2d 1403, 1407, 80 S. Ct. 1343, 1346; *Croom v. City of De Kalb* (1979), 71 Ill. App. 3d 370, 389 N.E.2d 647.

■ In *Croom*, this court found an express provision limiting the type of grievances which were subject to arbitration and held the grievance at issue to be nonarbitrable. (71 Ill. App. 3d 370, 375-76, 389 N.E.2d 647, 651-52.) The trial court here found the management rights clause to be an express provision excluding certain disputes from arbitration. We disagree. First, the arbitration clause, in defining grievances and subjecting them to arbitration, does not exempt disputes relating to the interpretation of any particular article. Second, the management rights article defines certain substantive rights of the company without exempting from arbitration differences of opinion over those definitions. Finally, the management rights are not absolute because of a clause that "such power shall not be used for the purpose of discrimination against any member of the Union or contrary to the provisions of the Agreement." Any dispute concerning the company's apparent exercise of a management right may involve an interpretation of this clause. The complaint here in fact does allege that the company's action discriminates against the union and violates Article 1. Because interpretation of the clause is effectively a difference of opinion of contract interpretation it is a question meant to be resolved by the arbitrator and not the courts. We conclude that the management rights article relates to the substantive rights of the parties and does not create an exception to the scope of the arbitration clause.

■ The company relies on *International Union United Automobile, Aerospace & Agriculture Implement Workers of America, UAW v. Lester Engineering Co.* (6th Cir. 1983), 718 F.2d 818. In that case, the Federal courts were asked by a union to enjoin a company from closing one of its plants. One of the criteria examined by the Sixth Circuit Court of Appeals in determining whether the injunction may be issued was whether the underlying labor dispute, the company's decision to close the plant, was arbitrable. Like the present case, the collective bargaining agreement contained a broad arbitration clause and a management prerogative clause that expressly gave the com-

pany the right to take the action at issue. The court concluded:

> "The decision to close is, as the District Court astutely observed, delegated to Lester under the terms of the collective bargaining agreement. The company rights clause of the agreement clearly gives Lester the unilateral right to close its facilities. Therefore, even if we read the arbitration clause broadly, we could not find the underlying dispute arbitrable." 718 F.2d 818, 824.

We believe that that conclusion involved the type of bootstrap reasoning faulted in *United Steel Workers of America v. American Manufacturing Co.* (1960), 363 U.S. 564, 568, 4 L. Ed.2d 1403, 1407, 80 S. Ct. 1343, 1346: the union cannot win on the merits, so therefore the dispute is not arbitrable. Since this court is not bound by decisions of the United States district and circuit courts (*City of Chicago v. Groffman* (1977), 68 Ill. 2d 112), we need not follow the lead of the *Lester* decision.

The union also raises two issues relating to extrinsic evidence. First, it challenges the submission of the affidavit of Ronald C. Fain, the company's manager of industrial relations. This affidavit was attached to the company's memorandum to the trial court in support of its motions for dismissal of the complaint and for summary judgment on the counterclaim. It is clear from the trial court's order that it based its decision upon the pleadings and the collective bargaining agreement itself, without reference to the Fain affidavit. In reaching the opposite conclusion on the arbitrability issue, we also rely solely on the pleadings and the agreement. Thus, we find it unnecessary to address the propriety of considering the Fain affidavit.

Second, the union moves this court to strike that part of the company's brief relating to a letter from the National Labor Relations Board to the union. The letter expressed the NLRB's decision to deny the union's appeal from the Regional Director's refusal to issue a complaint. We fail to see the relevance of the letter to either the trial court's determination or ours. Again, neither the trial court nor this court has used the letter in deciding this case. In light of our decision in the union's favor on this appeal, we need not decide the union's motion to strike.

■■ In sum, we hold that the complaint alleges a dispute which is arbitrable pursuant to the agreement between the parties. While the company could have bargained to exempt from arbitration all questions relating to express management rights, we conclude as a matter of law that the agreement here did not do so. Under the terms agreed to by both parties to the agreement, all that is required to trigger ar-

bitration is an *"allegation"* or *"a difference of opinion."* Therefore, while we might have concluded, as a matter of law, that the company's action is not a violation under the agreement, that is not the question for the court to resolve. Based upon this conclusion, the trial court erred in dismissing the complaint. Further, since section 2(a) of the Uniform Arbitration Act (Ill. Rev. Stat. 1981, ch. 10, par. 102(a)) calls for summary determination of a disputed arbitrability issue, the trial court should have granted the union's motion for summary judgment in its favor. Accordingly, we reverse the orders of the circuit court of Lake County dismissing the complaint and denying the union's summary judgment motion, and we remand to that court for an order compelling arbitration as requested in the complaint.

Reversed and remanded.

REINHARD and VAN DEUSEN, JJ., concur.