THE CITY OF CHICAGO *ex rel.* CHARLES EQUIPMENT COMPANY, Plaintiff-Appellee, v. UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant-Appellant (Statewide Insurance Company, Defendant-Appellee).

First District (5th Division)   No. 85—1285

Opinion filed March 31, 1986.

Donald L. Johnson and Kurt D. Baer, both of Chicago, for appellant.

Howard C. Emmerman and Richard S. Huszagh, both of Rudnick & Wolfe, of Chicago, for appellee City of Chicago.

Randall J. Marmor, of Gilmartin, Hallenbeck, Schroeder & Hacker, of Chicago, for appellee Statewide Insurance Company.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This appeal is from certain orders of the trial court in an action to recover upon bonds given in connection with contracts for the construction of a public works project.

The record discloses that on August 12, 1982, Klein Construction Company (Klein) entered into a general contract with the city of Chicago (city) for the construction of a police station and, pursuant to the provisions of section 1 of "An Act in relation to bonds of contractors entering into contracts for public construction" (Ill. Rev. Stat. 1981, ch. 29, par. 15) (the Bond for Public Works Act), and the terms of the general contract itself, delivered to the city a performance and payment bond issued by United States Fidelity & Guaranty Company (defendant) as surety thereon.

Subsequently, Cresent Electric Company (Cresent)[1] subcontracted with Klein to provide certain materials and labor for the project, including the furnishing and installation of an emergency generator. In accordance with the terms of the subcontract, Cresent delivered a subcontractor's bond issued by defendant Statewide Insurance Company (Statewide) naming Klein as obligee thereunder. On October 18, 1982, Cresent executed a written order for the purchase of the generator from Charles Equipment Company (plaintiff). The generator was delivered to Cresent in late May 1983, together with an invoice requesting payment of the agreed-upon price of $138,620.

---

[1] It appears from the record that prior to the filing of this action Cresent filed for bankruptcy, and is not a party in this suit.

Upon receipt from Cresent of (1) a payment request for $219,546 which included the cost of the generator, (2) a written waiver of lien rights for that amount, and (3) a sworn statement that "all Labor has been Paid in full. Materials from paid up stock delivered to the job site in our own trucks," on July 28, 1983, Klein paid Cresent the amount requested.

On September 2, 1983, plaintiff filed its verified notice of claim with the city under the Mechanics' Liens Act (Ill. Rev. Stat. 1981, ch. 82, par. 23), and the Bond for Public Works Act against monies due from the city to Klein as general contractor and/or to Cresent as Klein's subcontractor in the amount of $138,620, and on November 18, filed a two-count complaint seeking judgment against defendant and Statewide as sureties on their respective bonds. The complaint alleged in, in essence, that it had performed its subcontract with Cresent by supplying the generator; that it had not been paid therefor; and that under the terms of their respective bonds, defendant and Statewide were liable for the amount due.

Defendant's amended answer raised as affirmative defenses that (1) in accordance with the subcontract, Klein had paid Cresent for the generator furnished by plaintiff; (2) plaintiff had breached the no-lien provision of the Klein-Cresent contract by filing its lien claim; (3) as third-party beneficiary of the bond given by Statewide as surety for Cresent, it (defendant) was entitled to indemnification by Statewide for any unsatisfied claims by plaintiff against Cresent; and (4) the generator did not conform to the general contract specifications.

In its answer, Statewide maintained that only Klein, the named obligee on the bond, could assert the rights thereunder and also asserted as affirmative defenses that (1) Klein had breached the terms of its subcontract with Cresent; (2) its bond was not governed by the provisions of the Bond for Public Works Act; and (3) the generator did not comply with city specifications.

On April 27, 1984, plaintiff moved for summary judgment against defendant, and on May 23, defendant filed a counterclaim against Statewide alleging, *inter alia*, that (1) as surety for the obligee (Klein) of Statewide's bond, it was a third-party beneficiary thereunder and, thus, entitled under the terms of the bond to indemnification from Statewide "against any and all loss or damage directly arising by reason of the failure of Cresent to (a) faithfully perform the subcontract, and (b) pay all just claims for labor and materials furnished in the completion of said subcontract by persons, firms or corporations having direct contracts with Cresent," and also (2) that Statewide's refusal to pay plaintiff constituted a breach of that contract which ex-

posed it (defendant) to potential liability to Cresent's suppliers.

On August 15, 1984, after argument by counsel, the trial court granted plaintiff's motion for summary judgment against defendant, and on December 14, amended the order to include prejudgment interest of $4,872.87. Following a hearing on April 3, 1985, the court (1) reduced the amount of prejudgment interest to reflect a prior payment by defendant to plaintiff; (2) granted plaintiff's motion (a) for a finding that the August 15 order of summary judgment as modified by the December order was final and appealable under Supreme Court Rule 304(a) (103 Ill. 2d R. 304(a)); (b) to voluntarily dismiss its complaint against Statewide; and (3) denied defendant's motion for summary judgment against Statewide. This appeal followed.

Opinion

Defendant first contends that summary judgment for plaintiff was improper, arguing that under the well-settled maxim of surety law—that the liability of the surety cannot exceed that of its principal—its obligation to plaintiff was discharged when Klein, its principal, disbursed funds to Cresent to pay for the generator in reliance on Cresent's sworn statement that all charges for labor and materials listed on its payment request had been paid; and that, therefore, while plaintiff might have a valid claim against Cresent or its surety, Statewide, no right of action exists against it, as surety for the general contractor. We disagree.

Although we do not dispute the basic common law tenet that payment and performance by the principal extinguishes the liability of the surety, the instant action was predicated upon and is governed exclusively by the Bond for Public Works Act, which provides:

"Sec. 1. All officials, boards, commissions or agents of this State, or of any political subdivision thereof in making contracts for public work of any kind to be performed for the State, or a political subdivision thereof shall require every contractor for such work to furnish, supply and deliver a bond to the State, or to the political subdivision thereof entering into such contract, *** with good and sufficient sureties. *** *[S]uch bond,* among other conditions, *shall be conditioned for the completion of the contract, for the payment of material used in such work and for all labor performed in such work, whether by subcontractor or otherwise.*

Each such bond is deemed to contain the following provisions whether such provisions are inserted in such bond or not:

*'The principal and sureties on this bond agree* that all the

undertakings, covenants, terms, conditions and agreements of the contract or contracts entered into between the principal and the State or any political subdivision thereof will be performed and fulfilled and *to pay all persons, firms and corporations having contracts with the principal or with subcontractors, all just claims due them under the provisions of such contracts for labor performed or materials furnished in the performance of the contract on account of which this bond is given,* when such claims are not satisfied out of the contract price \*\*\*.' \*\*\*."

"Sec. 2. *Every person furnishing material or performing labor, either as an individual or as a sub-contractor for any contractor,* with the State or a political subdivision thereof where bond shall be executed as provided in this Act, *shall have the right to sue on such bond in the name of the State, or the political subdivision thereof entering into such contract* \*\*\* *for his use and benefit* \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 29, pars. 15, 16.

■ These sections provide an alternate remedy to that afforded by the Mechanics' Liens Act (*Decatur Housing Authority v. Christy-Foltz, Inc.* (1983), 117 Ill. App. 3d 1077, 454 N.E.2d 379), their purpose being to protect contractors and materialmen for whom no right of mechanic's lien exists against a public body (*Housing Authority of Franklin County v. Holtzman* (1970), 120 Ill. App. 2d 226, 256 N.E.2d 873; *Chicago Housing Authority v. United States Fidelity & Guaranty Co.* (1964), 49 Ill. App. 2d 407, 199 N.E.2d 217; *Board of Education v. Pacific National Fire Insurance Co.* (1958), 19 Ill. App. 2d 290, 153 N.E.2d 498), and to regulate claims against public monies (*Housing Authority v. Holtzman* (1970), 120 Ill. App. 2d 226, 256 N.E.2d 873; *Board of Education v. Pacific National Fire Insurance Co.* (1958), 19 Ill. App. 2d 290, 153 N.E.2d 498.

■ Here, defendant, as surety for Klein, the general contractor, executed a performance and payment bond under a contract with a government body, the city, for the construction of a public works project. The bond specifically provided, in language nearly identical to that of the statute, that "every person furnishing material or performing labor in the performance of said contract either as an individual, as a subcontractor or otherwise, shall have the right to sue on the bond in the name of the City \*\*\* for his use and benefit \*\*\*." In giving the bond, defendant also agreed under the provisions of the statute—which are deemed to be contained in every such bond whether actually inserted or not—to pay all persons, firms or corporations hav-

ing contracts with Klein or with subcontractors thereof all just claims due them under the provisions of such contracts for labor performed or materials furnished. Subsequent to the execution of this bond, Klein entered into a subcontract with Cresent, which, in turn, entered into an agreement with plaintiff for the purchase of the emergency generator required by the general contract for the use in the construction project. Plaintiff supplied the generator and submitted an invoice for the agreed-upon price, but was never paid by Cresent, although Klein had, apparently, paid Cresent an amount sufficient for it to do so. Thereafter in accordance with the statute, plaintiff filed a timely notice of its claim with the city and furnished both Klein and Cresent with copies thereof and, finally, brought this action on defendant's bond in the name of the city for its (plaintiff's) use and benefit. It is clear therefrom that plaintiff meets the definition of a corporation having a contract with a subcontractor (Cresent) under a general contract for the construction of a public works project; that it has fully complied with the terms of its subcontract and the procedural requisites for filing its claim and bringing this action under the Bond for Public Works Act; and, therefore, has a "just claim" for which defendant is liable under the provisions thereof.

■ Defendant further asserts, however, that a question of fact as to whether plaintiff's claim was waived also rendered summary judgment improper. Citing *Chicago Bridge & Iron Co. v. Reliance Insurance Co.* (1970), 46 Ill. 2d 522, 264 N.E.2d 134, and *Board of Education v. Hartford Accident & Indemnity Co.* (1965), 60 Ill. App. 2d 320, 208 N.E.2d 51, for the proposition that "a waiver of lien submitted by a subcontractor to a general contractor incorrectly stating that certain work or materials have been paid for bars a suit by that subcontractor against the contractor's surety in the event the subcontractor does not get paid," defendant argues, in essence, that the waiver of lien submitted by Cresent together with its sworn statement that the generator was "from paid-up stock" raised a presumption that plaintiff had also waived its lien for the amount due for the generator.

This argument is patently without merit. Initially, we note that the cases relied upon by defendant are readily distinguishable from the one at bar in that both were actions by subcontractors to recover unpaid amounts for which they had submitted express, written waivers of lien directly to the general contractor with which they had contracted, presumably to allow the general contractor to use the waivers to obtain payment from the government body. In each case, the court, applying the basic rule of surety law—that where a creditor releases the underlying security the obligation of the surety is dis-

charged—held that a subcontractor who voluntarily prejudices the rights of the surety on a performance and payment bond given to a government body by delivering express, written lien waivers therefor, does not have a "just claim" within the meaning of the Bond for Public Works Act and is thus barred from bringing an action thereunder.

Unlike those cases, there is nothing in the record before us to support defendant's assertion that plaintiff waived its lien rights either expressly or, as defendant postulates, by "its acquiescence in the waiver submitted by Cresent" to Klein for an amount sufficient to satisfy plaintiff's claim for the generator. To the contrary, defendant's own pleadings specifically refute its assertion. In an affidavit which was attached to defendant's motion for summary judgment against Statewide, Klein's vice-president stated that he did not authorize any payments to Cresent after June 1983 "because Cresent *** failed to deliver to Klein *** a waiver of lien from [plaintiff] showing that [plaintiff] had been paid *** for the generator" in accordance with the requirements of the general contract.

Having determined that the trial court correctly ruled as a matter of law that defendant was liable to plaintiff on its bond and that it failed to present any evidence in support of its affirmative defense that the claim was barred by waiver, we conclude that summary judgment for plaintiff was proper.

Defendant next contends that it was entitled to summary judgment on its counterclaim against Statewide, arguing that the facts presented in support thereof were the same as those on which the trial court granted summary judgment for plaintiff against it, and reasoning therefrom that if, as the trial court determined, plaintiff had a "just claim" against it (defendant) on the statutory bond, the "law of the case" doctrine mandates a finding that plaintiff also had a "just claim" against Statewide on the subcontractor's bond, and that as surety for the obligee (Klein) thereunder, it is entitled to indemnification from Statewide for the amount of the judgment entered against it by reason of the failure of Cresent—Statewide's principal—to pay for the generator.

This contention raises several interesting questions; however, we have determined that we lack jurisdiction to consider them. The scope of our jurisdiction is fixed by statute and is confined in civil cases to appeals from (a) final orders or judgments of the circuit court (87 Ill. 2d Rules 301, 304), and (b) certain interlocutory orders specified in the supreme court rules (87 Ill. 2d Rules 307, 308; *Branch v. European Autohaus, Ltd.* (1981), 97 Ill. App. 3d 949, 424 N.E.2d 6).

Although defendant's contention is phrased in the affirmative,

*i.e.*, that it was entitled to summary judgment on its counterclaim, it is, of course, an appeal from the denial thereof. It is well settled that an order denying summary judgment is not itself a final judgment and, ordinarily, not appealable. (*Bigelow-Liptak Corp. v. Mazzucco Construction Co.* (1972), 4 Ill. App. 3d 90, 280 N.E.2d 276.) The only exception to the general rule arises where the case is on appeal from a final judgment to which the judgment sought to be reviewed directly relates, there has been no evidentiary hearing or trial, and the party seeking review has not in any way prevented or avoided such hearing or trial (*International Association of Machinists & Aerospace Workers, District Lodge No. 140 v. Cheshire/A Xerox Co.* (1984), 125 Ill. App. 3d 350, 465 N.E.2d 981; *Novak v. Insurance Administration Unlimited, Inc.* (1980), 91 Ill. App. 3d 148, 414 N.E.2d 258) (denial of plaintiffs' motions for summary judgment reviewable since the trial courts' dismissals of plaintiffs' complaints were final judgments properly before the appellate court).

■ In our view, the order at issue here is neither a final judgment nor one appealable under the supreme court rules or by reason of the exception stated above. First, unlike the summary judgment entered for plaintiff, the order denying summary judgment on defendant's counterclaim did not fully adjudicate the rights, claims and liabilities of defendant and Statewide respectively. As the trial court specifically noted in the order, the bond against which defendant seeks to recover from Statewide is a subcontractor's bond as to which there are material questions of fact regarding whether Klein's conduct, particularly in releasing funds to Cresent in reliance on Cresent's lien waiver alone, constituted a breach of its general contract with the city—a matter which could bar recovery against Statewide but which has no bearing on defendant's liability to plaintiff on the statutory bond. Thus, while defendant's counterclaim may have arisen from the same incident as plaintiff's complaint, *i.e.*, nonpayment for the generator, it is premised on a different theory of recovery and requires proof of facts not necessary to sustain a judgment in the statutory action on the public works bond, and is, in fact, a separate and distinct cause of action not sufficiently related to plaintiff's original suit as to render the denial of summary judgment reviewable. See *Decatur Housing Authority v. Christy-Foltz, Inc.* (1983), 117 Ill. App. 3d 1077, 454 N.E.2d 379.

Finally, the order contains no finding that there is no just reason for delaying enforcement or appeal; indeed, the record discloses that when inclusion of such language under Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)), was requested, the court refused, specifically stating

that it was intended to be a nonfinal, interlocutory order. It has been held that the trial court's refusal to make the requisite finding of finality and appealability is not subject to review. *Bloom v. Landy* (1979), 72 Ill. App. 3d 383, 401, 389 N.E.2d 1286, 1300.

For the reasons stated, we affirm the trial court's order granting summary judgment for plaintiff and against defendant, and we dismiss defendant's appeal from the denial of summary judgment in its counterclaim against Statewide.

Affirmed in part; dismissed in part and remanded for further proceedings.

PINCHAM and LORENZ, JJ., concur.