# Illinois Official Reports

## Supreme Court

---

**Lake County Grading Co. v. Village of Antioch, 2014 IL 115805**

---

Caption in Supreme Court:

LAKE COUNTY GRADING COMPANY, LLC, Appellee, v. THE VILLAGE OF ANTIOCH, Appellant.

Docket No.

115805

Filed

October 17, 2014

Held

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

The Public Construction Bond Act protects subcontractors for whom no right of mechanic's lien exists against a public body by guaranteeing that labor and materials furnished to one who contracts with a public body are paid for, even if such provisions are not specifically included in the bonds provided under the Act.

Decision Under Review

Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Lake County, the Hon. Margaret M. Mullen, Judge, presiding.

Judgment

Appellate court judgment reversed.
Circuit court judgment reversed.
Cause remanded with directions.

Counsel on Appeal         Robert J. Long, of Daniels, Long & Pinsel, LLC, of Waukegan, and Lawrence R. Moelmann and Nancy G. Lischer, of Hinshaw & Culbertson LLP, of Chicago, for appellant.

Bogdan Martinovich, of Ray & Glick, Ltd., of Libertyville, for appellee.

Brian Day and Roger Huebner, of Springfield, for *amicus curiae* The Illinois Municipal League.

Justices         JUSTICE THEIS delivered the judgment of the court, with opinion.
Chief Justice Garman and Justices Thomas, Kilbride, and Karmeier concurred in the judgment and opinion.
Justice Freeman dissented, with opinion, joined by Justice Burke.

**OPINION**

¶ 1    The circuit court of Lake County granted summary judgment to plaintiff, Lake County Grading Company, LLC, on its third-party beneficiary breach of contract claims against defendant, Village of Antioch (Village). The appellate court affirmed, holding that the Village breached the subject contracts by violating section 1 of the Public Construction Bond Act (Bond Act) (30 ILCS 550/1 (West 2008)). 2013 IL App (2d) 120474, ¶¶ 39-40. For the reasons that follow, we hold that the Village did not violate section 1 of the Bond Act, and, therefore, reverse the judgments of the appellate and circuit courts.

¶ 2                                    BACKGROUND
¶ 3    This cause of action arises from construction work performed in two residential subdivisions located in Antioch, Illinois, known as the NeuHaven subdivision (formerly the Deercrest subdivision), and the Clublands subdivision. Neumann Homes, Inc. (Neumann), was the developer of both subdivisions.[1]

¶ 4    The Village entered into two infrastructure agreements (the contracts) with Neumann to make certain public improvements in the subdivisions for the benefit of the Village. Pursuant to the contracts, and based upon section 1 of the Bond Act, Neumann was required to provide surety bonds, the amount of which was based on the total cost of the improvements.

¶ 5    Section 1 of the Bond Act provides, *inter alia*, that a political subdivision of the State, such as the Village, contracting for public works above a specific dollar amount shall require the contractor, as part of the agreement, to supply and deliver a bond. 30 ILCS 550/1 (West 2008). Each such bond is "deemed" to contain certain provisions, even if they are not expressly

_____
[1]Neumann is not a party to this appeal.

included in the bond, and must provide for the completion of the contract, the payment of materials used in the work, and all labor performed in the work, including work completed by subcontractors. *Id.*

¶ 6    Neumann provided four surety bonds issued by Fidelity and Deposit Company of Maryland (Fidelity) that were substantively identical. Each bond provided, in pertinent part:

> "[The P]rincipal [Neumann] shall perform and complete *** improvement(s) to *** development in accordance with either the plan(s)/specification(s)/agreement [prepared by Pearson Brown & Associates, Inc. or Manhard Consulting], then this obligation shall be void ***. This bond will terminate upon written acceptance of the improvements by the obligee [Village] to the principal [Neumann] and/or surety [Fidelity]."

The four surety bonds totalled $18,128,827.

¶ 7    It is undisputed the bonds provided by Neumann did not contain specific "payment bond" language that expressly guaranteed payment to subcontractors for labor or materials. A payment bond generally provides that if the contractor does not pay its subcontractors and material suppliers, the surety will pay them. See *Western Waterproofing Co. v. Springfield Housing Authority*, 669 F. Supp. 901, 903 (C.D. Ill. 1987). In contrast, a "completion bond" (also known as a "performance bond") provides that if the contractor does not complete a project, the surety will pay for its completion. *Id.*

¶ 8    Plaintiff and Neumann also entered into agreements for plaintiff to provide certain labor and materials for the public improvements required under the contracts. Plaintiff completed the work, but was not paid in full. Neumann later defaulted on its contract with the Village and declared bankruptcy on November 1, 2007. Plaintiff last performed work on the Clublands subdivision on December 23, 2006. Plaintiff last performed work on the NeuHaven subdivision on April 16, 2007. On February 18, 2008, plaintiff served Neumann and the Village with notices of a lien claim for the work it had completed on the project.

¶ 9    Plaintiff ultimately filed a five-count second amended complaint seeking to recover payment from the Village. In counts II and IV, the only counts at issue here, plaintiff alleged breach of contract claims related to the work performed by plaintiff in the NeuHaven and Clublands subdivisions. Specifically, plaintiff alleged the Village breached the contracts because the surety bonds provided by Neumann did not contain actual language guaranteeing payment to subcontractors as mandated by the first paragraph of section 1 of the Bond Act. Plaintiff further alleged that by virtue of this provision in section 1, it became a third-party beneficiary of the contracts between the Village and Neumann because the requirements contained therein are read into every public works contract for the benefit of subcontractors such as itself.

¶ 10    The parties filed cross-motions for summary judgment. The Village in its motion also relied upon section 1. It asserted that based upon the "deeming language" contained in the statute, the bonds procured by Neumann were sufficient because they contained both completion and payment provisions as a matter of law and covered all of the site improvements which plaintiff constructed. The Village argued that plaintiff's only cause of action was against the bonds themselves, but because plaintiff gave notice of its claims more than 180 days after last working on the project, the claims were barred by the limitations period found in section 2 of the Bond Act (30 ILCS 550/2 (West 2008)).

¶ 11    In response to the Village's motion for summary judgment, plaintiff did not dispute that it made its notices of claims more than 180 days after last performing work or providing materials, but argued that the limitations period applied only to a suit on the bond. Plaintiff claimed that the 180-day limitations period was inapplicable to its breach of contract claims because in a case such as this where no payment bond was procured, a suit on the bond is impossible.

¶ 12    The issue before the trial court was therefore whether the surety bonds provided by Neumann to the Village conformed with the relevant requirements of section 1 of the Bond Act.

¶ 13    The trial court granted plaintiff's motion for summary judgment on counts II and IV of the second amended complaint for the work it performed on the two subdivisions, but granted the Village's cross-motion for summary judgment as to counts I, III, and V, dismissing those counts with prejudice. As to counts II and IV, the only counts at issue here, the trial court concluded that the bonds provided by Neumann were completion bonds, not payment bonds, and that it could not impute the "deeming language" contained in section 1 into a completion bond that did not specifically contain a payment bond provision. The trial court ultimately entered judgment in plaintiff's favor in the amount of $246,054.73.

¶ 14    The appellate court affirmed. 2013 IL App (2d) 120474, ¶ 40. In interpreting section 1 of the Bond Act, the appellate court held that the Act mandates the public entity require the general contractor to obtain a bond that contains language that expressly provides payment for the benefit of subcontractors. *Id.* ¶ 36. It found the Village breached its contractual obligation by not requiring Neumann to furnish a bond with an express payment provision for subcontractors. *Id.* ¶ 33. The appellate court held that the requirement to obtain such a bond became a term of the contract between Neumann and the Village and that plaintiff, as a subcontractor, was a direct third-party beneficiary with the right to sue on the contract. *Id.*

¶ 15    The appellate court further held that the language found in section 1, which provides that payment provisions are deemed to be included in the bond, applies only after the public entity satisfies the predicate condition of requiring the contractor to procure a bond with a payment guarantee. *Id.* ¶ 36. The appellate court concluded that the limitations period found in section 2 applied only to a suit on the bond and that where no payment bond is procured, this section is inapplicable. *Id.* ¶ 39. Consequently, the appellate court found that plaintiff's breach of contract claims were not time barred because the four-year statute of limitations for construction contracts (see 735 ILCS 5/13-214 (West 2008)) applied rather than the 180-day limitations period contained in the Bond Act. 2013 IL App (2d) 120474, ¶ 39.

¶ 16    This court granted the Village's petition for leave to appeal (Ill. S. Ct. R. 315(a) (eff. July 1, 2013)) and also allowed the Illinois Municipal League to file an *amicus curiae* brief in support of the Village (Ill. S. Ct. R. 345 (eff. Sept. 20, 2010)).

¶ 17                                    ANALYSIS

¶ 18    This case comes before us on the trial court's grant of summary judgment. Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008). The interpretation of a statute, such as the Bond Act at issue in this appeal, is a matter of law and

- 4 -

thus presents a matter that is appropriate for summary judgment. *Village of Chatham, Illinois v. County of Sangamon, Illinois*, 216 Ill. 2d 402, 433 (2005). We review summary judgment rulings and issues of statutory interpretation *de novo*. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

¶ 19        It is well settled that our primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. *MidAmerica Bank, FSB v. Charter One Bank, FSB*, 232 Ill. 2d 560, 565 (2009). The plain language of a statute is the most reliable indication of legislative intent. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). "[W]hen the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation." *Id.*

¶ 20        At issue is whether the surety bonds provided by Neumann to the Village conformed with the relevant requirements of section 1. If the surety bonds were not deficient under this provision of the Bond Act, the Village is entitled to judgment in its favor as a matter of law on plaintiff's breach of contract claims.

¶ 21        The following portion of section 1 is at issue and provides, in pertinent part:

> "§ 1 Except as otherwise provided by this Act, all officials, boards, commissions, or agents of this State in making contracts for public work of any kind costing over $50,000 to be performed for the State, and all officials, boards, commissions, or agents of any political subdivision of this State in making contracts for public work of any kind costing over $5,000[2] to be performed for the political subdivision, shall require every contractor for the work to furnish, supply and deliver *a bond* to the State, or to the political subdivision thereof entering into the contract, as the case may be, with good and sufficient sureties. The amount of *the bond* shall be fixed by the officials, boards, commissions, commissioners or agents, and *the bond*, among other conditions, shall be conditioned for the completion of the contract, for the payment of material used in the work and for all labor performed in the work, whether by subcontractor or otherwise.
>
> If the contract is for emergency repairs as provided in the Illinois Procurement Code, proof of payment for all labor, materials, apparatus, fixtures, and machinery may be furnished in lieu of the bond required by this Section.
>
> Each such bond is deemed to contain the following provisions whether such provisions are inserted in such bond or not:
>
> 'The principal and sureties on this bond agree that all the undertakings, covenants, terms, conditions and agreements of the contract or contracts entered into between the principal and the State or any political subdivision thereof will be performed and fulfilled and to pay all persons, firms and corporations having contracts with the principal or with subcontractors, all just claims due them under the provisions of such contracts for labor performed or materials furnished in the performance of the contract on account of which this bond is given, when such claims are not satisfied out of the contract price of the contract on account of which this bond is given, after final settlement between the officer, board, commission or agent of the State or of any

---

[2]Public Act 98-216, effective August 9, 2013, increased the threshold amount before a bond would be required for projects by local governments to those costing over $50,000. Based upon the effective date, this amendment is not applicable to this case.

political subdivision thereof and the principal has been made.[']" (Emphases added.) 30 ILCS 550/1 (West 2008).

¶ 22    Thereafter, section 2 prescribes, in pertinent part, that any party seeking to enforce a claim for labor or materials has no right of action under the Bond Act unless the party files a verified notice of the claim with the officer, board, bureau, or department awarding the contract, within 180 days after the date of the last item of work or the furnishing of the last item of materials. 30 ILCS 550/2 (West 2008).

¶ 23    The Village contends, as it did in the appellate court, that section 1 incorporates completion and payment provisions in all surety bonds for public construction in Illinois, even if the bonds themselves do not expressly include such provisions, due to the "deemed to contain" language found in paragraph three. The Village asserts that the bonds procured by Neumann would have satisfied all of plaintiff's claims for payment if plaintiff had made a claim against the bonds within the 180-day limitations period.

¶ 24    We agree. Based upon its plain language, the first paragraph of section 1 mandates that a political subdivision of the State, such as the Village, whenever making a contract for public works in excess of the specified dollar threshold, must have the contractor deliver "a bond" with good and sufficient sureties. This paragraph further provides that the amount of "the bond" shall be fixed by the public official and "the bond" shall be conditioned, among other conditions, upon the completion of the contract and for the payment of material and labor. Consequently, this paragraph does not require, as plaintiff suggests, the furnishing of a "completion bond" *and* a "payment bond" but, rather, the procurement of "a bond" for the public work.

¶ 25    Thereafter, the third paragraph stipulates that "[e]ach such bond is deemed to contain the following provisions *whether such provisions are inserted in such bond or not*." (Emphasis added.) 30 ILCS 550/1 (West 2008). This paragraph continues by providing language that ensures payment to all persons who have performed labor or provided materials "in the performance of the contract on account of which this bond is given." Therefore, regardless of the actual language contained in a public construction bond procured in accordance with section 1, the legislature has unambiguously provided that all such bonds are deemed to contain both completion and payment provisions as a matter of law. Simply put, we cannot envision a clearer indication of legislative intent concerning the question before us than the language contained in paragraph three that "[e]ach such bond is deemed to contain the following [payment and completion] provisions whether such provisions are inserted in such bond or not."

¶ 26    Plaintiff's suggested interpretation is also inconsistent with the well established two-fold purpose of section 1 of the Bond Act. First, the language at issue in this appeal protects subcontractors for whom no right of mechanic's lien exists against a public body by guaranteeing payment for their labor and materials furnished to the contractor. See, *e.g.*, *Carroll Seating Co. v. Verdico*, 369 Ill. App. 3d 724, 727 (2006); *Aluma Systems, Inc. v. Frederick Quinn Corp.*, 206 Ill. App. 3d 828, 853-54 (1990); *Housing Authority v. Holtzman*, 120 Ill. App. 2d 226, 241 (1970). This provision assures payment to subcontractors who make a timely demand on the bond, pursuant to section 2, who might otherwise have to depend solely on the responsibility of the contractor to make payment for the labor and material provided. *Id.* Second, this provision of the Bond Act guards the tax money allotted for public

works by assuring that the terms, conditions and agreements of the contract will be fulfilled and paid by the surety if the contractor does not complete the project. *Id.* Consistent with this dual purpose, and contrary to plaintiff's suggested construction, the language in paragraph three of section 1 guarantees completion and payment provisions are deemed in every bond procured for a public project to assure that sufficient funds are available to pay both subcontractors and material suppliers and to complete the project if the contractor does not.

¶ 27    Plaintiff attempts to circumvent the plain language of section 1 of our Bond Act by suggesting the phrase "[e]ach such bond" in the third paragraph applies only to bonds which already have payment bond provisions contained therein. Plaintiff asserts that "the import of section 1 of the Bond Act is to deem the stated language added only after it has been established that payment bonds were obtained pursuant to that section." It is self-evident, however, that if a bond already has a provision for payment to subcontractors it would be unnecessary to deem the payment language contained in paragraph three into that bond. Plaintiff's suggested interpretation would render the language contained in paragraph three that "[e]ach such bond is deemed to contain the following provisions whether such [payment or completion] provisions are inserted in such bond or not" meaningless or redundant. See *People v. Jones*, 223 Ill. 2d 569, 594 (2006) (this court has an obligation to avoid a construction of a statute which would render a part of it redundant or superfluous and instead must presume that each part of the statute has meaning).

¶ 28    We note for purposes of comparison that the language found in section 1 of our Bond Act contrasts significantly with the statutory language found in the comparable federal bond statute. Under the federal statute, a contractor is required to furnish to the government both a "[p]erformance bond" *and* a "[p]ayment bond." See 40 U.S.C. § 3131(b)(1), (2) (2012) ("Type of bonds required.—Before any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government the following bonds, which become binding when the contract is awarded: (1) Performance bond. *** (2) Payment Bond.").

¶ 29    Our research further reveals that, unlike our Bond Act, certain other state statutes contain similar language to the federal bond statute which specifically requires the procurement of a payment bond *and* a completion bond for public works. See, *e.g.*, Tex. Gov't Code § 2253.021(a) (West 2012) ("A government entity that makes a public work contract with a prime contractor shall require the contractor, before beginning the work, to execute to the governmental entity: (1) a performance bond if the contract is in excess of $100,000; and (2) a payment bond if *** the contract is in excess of $50,000, and the governmental entity is a municipality ***."); N.Y. State Fin. Law § 137 (West 2012) ("In addition to other bond or bonds, if any, required by law for the completion of a work specified in a contract for the prosecution of a public improvement *** the comptroller *** shall nevertheless require *** a bond guaranteeing prompt payment of moneys due to all persons furnishing labor or materials to the contractor ***."); Minn. Stat. Ann. § 574.26 Subd. 2 (West 2012) ("[a] contract with a public body for the doing of any public work is not valid unless the contractor gives (1) a performance bond to the public body *** and (2) a payment bond").

¶ 30    In contrast to the language contained in the federal and state statutes above, our Bond Act only requires the procurement of "a bond" in connection with a public work and once the bond is obtained, it is deemed to include both a payment and performance provision. This language

is markedly different from that contained in the federal and state statutes quoted above that plainly require the procurement of a performance *and* a payment bond.

¶ 31    Plaintiff has not cited, and our research has not revealed, any case where a contractor furnished a bond as required under section 1 and the court found that the payment provisions contained therein were not deemed part of the bond. The cases relied upon by plaintiff do not inform our decision because, in contrast to the instant case, they either involved circumstances where the contractor failed to procure a bond of any kind (see, *e.g.*, *A.E.I. Music Network, Inc. v. Business Computers, Inc.*, 290 F.3d 952, 954 (7th Cir. 2002)), or where the case was based on the absence of a payment bond and there was no discussion of whether the public entities had procured a completion bond into which the payment provisions of section 1 could be read (see, *e.g.*, *Ardon Electric Co. v. Winterset Construction*, *Inc.*, 354 Ill. App. 3d 28, 32 (2004)).

¶ 32    For these reasons, we conclude that based upon the deeming language contained in paragraph three of section 1, the four surety bonds furnished by Neumann contained both completion and payment provisions as a matter of law. In light of our determination, we need not consider, and we make no comment today, on the Village's additional claim that plaintiff did not qualify as a third-party beneficiary under the contracts the Village entered into with Neumann.

¶ 33    Finally, plaintiff raises two alternative underdeveloped arguments that the lower courts did not reach for affirming the award of summary judgment. As far as we can discern, plaintiff initially claims the Village also violated section 1 of the Bond Act because the four surety bonds issued by Fidelity did not cover all of the unpaid work it performed. Plaintiff's argument appears to be based on a claim that the Village did not obtain any bond related to the work performed during "phase two" and "phase four" in the Clublands subdivision. The record establishes that the four surety bonds covered different phases of the project in the two subdivisions. One of the four surety bonds specifically covered "phase one" at Clublands while a second surety bond covered "phase three" there.

¶ 34    Count IV of the second amended complaint contained plaintiff's breach of contract claim concerning the work it performed at Clublands. This count included an attached exhibit with a description and specific cost of all the work and materials provided by plaintiff. Our review of this exhibit, however, indicates that it only concerns improvements provided by plaintiff during phase one and phase three at Clublands. Therefore, any claim by plaintiff regarding lack of a surety bond for work performed during phases two and four at Clublands was not properly pled by plaintiff and is irrelevant to our determination here.

¶ 35    Plaintiff's second alternative argument is even more underdeveloped and occupies less than one page of its brief. Plaintiff simply claims that the Village also violated section 1 of the Bond Act because a clause in the contracts "show[s] that [the Village] never intended to have any Payment Bonds for the protection of the subcontractors, but that the subcontractors were to be paid solely from SSA bond proceeds." This argument is apparently related to the fact that the Village paid for a portion of the site improvement costs by issuing two "Special Service Area" bonds for each of the subdivisions. Plaintiff, however, does not provide any elaboration or real argument of how this payment scheme involving the SSA bonds impacted it or could constitute a repudiation of the requirements of section 1. Furthermore, plaintiff does not cite to any authority.

¶ 36    As we have previously instructed, "a reviewing court is not simply a depository into which a party may dump the burden of argument and research." *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56. "A court of review is entitled to have the issues clearly defined and to be cited pertinent authority." (Emphasis omitted.) *Id.* "A point not argued or supported by citation to relevant authority fails to satisfy the requirements of Supreme Court Rule 341(h)(7), (i) (see Ill. S. Ct. R. 341(h)(7), (i) (eff. Feb. 6, 2013) [citation])." *Id.* Both argument and citation to relevant authority are required. *Id.* Where, as here, the issue " 'is merely listed or included in a vague allegation of error [it] is not 'argued' and will not satisfy the requirements of the rule.' " *Id.* (quoting *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010)). Accordingly, plaintiff has forfeited review of this issue. *Id.*

¶ 37                                              CONCLUSION

¶ 38    We hold that under the plain language of the statute, the bonds furnished by Neumann to the Village were sufficient and did not violate the pertinent provisions of section 1 of the Bond Act. Therefore, the Village did not breach any contractual obligation owed to plaintiff in obtaining the bonds for the public work performed by Neumann.

¶ 39    For the foregoing reasons, the judgments of the appellate and circuit courts are reversed, and the cause remanded to the trial court with directions to enter an order granting summary judgment in the Village's favor on counts II and IV of the second amended complaint.

¶ 40    Appellate court judgment reversed.

¶ 41    Circuit court judgment reversed.

¶ 42    Cause remanded with directions.

¶ 43    JUSTICE FREEMAN, dissenting:

¶ 44    In today's decision, the majority takes the extraordinary step of declaring that a surety bond that explicitly guarantees a single obligation must, by operation of law, be interpreted as guaranteeing a second obligation that is not referenced in the bond at all. As a result, the majority holds that the Village of Antioch (the Village) cannot be held liable for its failure to require a public construction bond that is expressly conditioned for completion of the contract and payment for labor and materials furnished by subcontractors, even though section 1 of the Public Construction Bond Act (Bond Act) (30 ILCS 550/1 (West 2008)) obligates the Village to do exactly that. For the following reasons, I disagree and respectfully dissent.

¶ 45    The Village entered into two contracts with a general contractor, Neumann Homes, Inc. (Neumann), to make certain public improvements. Neumann, in turn, entered into subcontracts with Lake County Grading Company, LLC (Lake County Grading), to provide labor and materials for certain portions of the public improvements benefitting the Village.

¶ 46    Section 1 of the Bond Act provides that where the State or a political subdivision thereof enters into a public construction contract that exceeds the statutory threshold amount, the public body must require the contractor to provide a bond that "shall be conditioned for the completion of the contract, for the payment of material used in the work and for all labor performed in the work, whether by subcontractor or otherwise." 30 ILCS 550/1 (West 2008). As the majority explains, a payment bond secures the obligation of the general contractor to pay its subcontractors for labor and materials, while a completion bond (sometimes referred to

as a performance bond) guarantees the general contractor's obligation to complete the construction project. See *supra* ¶ 7 (citing *Western Waterproofing Co. v. Springfield Housing Authority*, 669 F. Supp. 901, 903 (C.D. Ill. 1987)).

¶ 47    In this case, Neumann provided four surety bonds that, on their faces, secured its obligations to "perform and complete" various aspects of the public improvements for the Village. As the majority acknowledges, it is undisputed that the bonds provided by Neumann did not contain any language that guaranteed payment to subcontractors for labor or materials.

¶ 48    Although Lake County Grading completed the work specified in the subcontracts, it was not paid in full. Neumann subsequently defaulted on its contract with the Village and declared bankruptcy. Lake County Grading subsequently brought suit, as a third-party beneficiary, seeking recovery against the Village for breach of its contract with Neumann. Those claims were premised on the Village's violation of its statutory duty to require that Neumann procure an appropriate construction bond that secured payment to subcontractors for labor and materials.

¶ 49    At the time the contracts were entered into, section 1 of the Bond Act provided, in relevant part, as follows:

> "§ 1. Except as otherwise provided by this Act, all officials, boards, commissions or agents of this State, or of any political subdivision thereof in making contracts for public work of any kind costing over $5,000 to be performed for the State, or a political subdivision thereof shall require every contractor for the work to furnish, supply and deliver a bond to the State, or to the political subdivision thereof entering into the contract, as the case may be, with good and sufficient sureties. The amount of the bond shall be fixed by the officials, boards, commissions, commissioners or agents, and the bond, among other conditions, shall be conditioned for the completion of the contract, for the payment of material used in the work and for all labor performed in the work, whether by subcontractor or otherwise.
>
> If the contract is for emergency repairs as provided in the Illinois Procurement Code, proof of payment for all labor, materials, apparatus, fixtures, and machinery may be furnished in lieu of the bond required by this Section.
>
> Each such bond is deemed to contain the following provisions whether such provisions are inserted in such bond or not:
>
> 'The principal and sureties on this bond agree that all the undertakings, covenants, terms, conditions and agreements of the contract or contracts entered into between the principal and the State or any political subdivision thereof will be performed and fulfilled and to pay all persons, firms and corporations having contracts with the principal or with subcontractors, all just claims due them under the provisions of such contracts for labor performed or materials furnished in the performance of the contract on account of which this bond is given, when such claims are not satisfied out of the contract price of the contract on account of which this bond is given, after final settlement between the officer, board, commission or agent of the State or of any political subdivision thereof and the principal has been made.' " 30 ILCS 550/1 (West 2002).

¶ 50    The majority concludes that this section must be interpreted to provide that every bond for a public construction project necessarily guarantees both performance and payment for labor

and materials, regardless of the nature of the bond that has been actually obtained. See *supra* ¶ 26. I cannot agree because the majority's interpretation is contradicted by the plain language of section 1, as well as its purpose and history. In addition, the result reached by the majority is contrary to the common sense application of the statute and creates the potential for confusion with regard to public construction bonds in the future.

¶ 51    The primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. *Nelson v. Kendall County*, 2014 IL 116303, ¶ 23. The best evidence of that intent is the language of the statute, which must be given its plain, ordinary and popularly understood meaning. *Id.* Each word, clause and sentence of a statute must be given a reasonable construction, if possible, and should not be rendered superfluous. *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 15. Also, a court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Id.*

¶ 52    The first paragraph of section 1 governs the relationship between the State or political subdivision and the contractor. That paragraph imposes a mandatory obligation on the public body to require that the contractor obtain a bond that guarantees both completion of the project and payment for labor and materials furnished by subcontractors. 30 ILCS 550/1 (West 2002).

¶ 53    The third paragraph begins with the clause "Each such bond is deemed to contain the following provisions whether such provisions are inserted in such bond or not." *Id.* The phrase "[e]ach such bond" refers back to the type of bond that is described in the first paragraph—*i.e.*, bonds that are conditioned for completion of the contract and payment for labor and materials. See generally *Hooker v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2013 IL 114811, ¶ 19 (employing similar reasoning to determine the meaning of a clause in the Illinois Pension Code). What follows the initial clause in the third paragraph is specific language, included within quotation marks, indicating that the surety is obligated to guarantee completion of the project and payment to subcontractors. 30 ILCS 550/1 (West 2002). Thus, the third paragraph, which addresses the relationship between the surety and the contractor, clarifies the obligations of the surety where the wording of the bond may be viewed as ambiguous.

¶ 54    The majority acknowledges that statutory provisions are not to be construed in a manner that renders language meaningless or redundant. *Supra* ¶ 27 (citing *People v. Jones*, 223 Ill. 2d 569, 594 (2006)). Yet, the majority's interpretation does just that by rendering the "conditioned for" portion of the first paragraph superfluous. If the provisions in the third paragraph, which serve to clarify a surety's duty, are construed to define the nature of every bond issued for a public construction project, there is no need for the legislature to include the "conditioned for" clause in the first paragraph to specify the contractual obligations that must be guaranteed. Also, the majority's analysis nullifies the effect of the word "such" in the third paragraph. The deliberate use of the phrase "[e]ach such bond" demonstrates that the legislature intended that clause to refer back to the specific type of bond that was described in the first paragraph of the section.

¶ 55    In my view, the only way in which the terms of section 1 can be construed without rendering portions of its language meaningless is to interpret the "deemed to contain" provision as clarifying potentially ambiguous language in the construction bond itself—not as

altering the statutory duty to require a bond that guarantees both completion and payment to subcontractors, as imposed in the first paragraph.

¶ 56    I agree with the majority's determination that the language in section 1 is clear and unambiguous. I also agree that two, separate bonds are not required. However, where a single bond is obtained, that bond must reflect that it secures two distinct obligations: completion (protecting the public body) and payment for labor and materials (protecting subcontractors).

¶ 57    Moreover, the history and purpose of the statute demonstrate that the third paragraph is intended only to clarify potentially ambiguous language in the construction bond. When the Bond Act was originally enacted in 1931, section 1 required only a payment bond to guarantee that subcontractors would be paid for labor and materials furnished in the construction of public works. Ill. Rev. Stat. 1933, ch. 29, ¶ 15. The statute did not require a bond to secure the completion of public improvement projects, and the recognized purpose of section 1 was to protect subcontractors who did not have a mechanic's lien right against a public work. See *Fodge v. Board of Education of the Village of Oak Park, District 97*, 309 Ill. App. 109, 122-23 (1941); see also *Chicago Housing Authority v. United States Fidelity & Guaranty Co.*, 49 Ill. App. 2d 407, 410 (1964); *Board of Education, Northfield Township High School, District No. 225 v. Pacific National Fire Insurance Co.*, 19 Ill. App. 2d 290, 299 (1958).

¶ 58    In 1941, the legislature amended section 1 by adding a new paragraph, which provided as follows:

> "Each such bond shall be deemed to contain the following provisions whether such provisions be inserted in such bond or not:
>
> 'The principal and sureties on this bond agree to pay all persons, firms and corporations having contracts with the principal or with sub-contractors, all just claims due them under the provisions of such contracts for labor performed or materials furnished, in the performance of the contract on account of which this bond is given, when such claims are not satisfied out of the contract price of the contract on account of which this bond is given, after final settlement between the officer, board, commission or agent of the State or of any political subdivision thereof and the principal has been made.' " Ill. Rev. Stat. 1941, ch. 29, ¶ 15.

¶ 59    Since only a payment guarantee was statutorily mandated at that time, the additional provisions that were included by operation of law could only have been intended as clarifying language to remedy otherwise ambiguous terms in public construction bonds. The "deemed to contain" language clearly did not alter or expand the essential nature of the payment bonds that were required for public construction projects in 1941.

¶ 60    The requirement of a completion bond was not added until 26 years later. In 1967, section 1 was amended to provide, in pertinent part, "and such bond, among other conditions, shall be conditioned *for the completion of the contract*, for the payment of material used in such work and for all labor performed in such work, whether by subcontractor or otherwise." (Emphasis added.) Ill. Rev. Stat. 1967, ch. 29, ¶ 15. The inclusion of this second type of guarantee was intended to protect public bodies by safeguarding "tax money allotted for public works." *Housing Authority v. Holtzman*, 120 Ill. App. 2d 226, 241 (1970). At that time, the legislature also inserted new language in the "deemed to contain" provision to coincide with the imposition of the duty to require a completion bond:

"The principal and sureties on this bond agree that all the undertakings, covenants, terms, conditions and agreements of the contract or contracts entered into between the principal and the State or any political subdivision thereof will be performed and fulfilled ***." (Emphasis added.) (Internal quotation marks omitted.) *Id*. at 235.

¶ 61 This revision, which was made in tandem with the imposition of the new requirement that performance be guaranteed, demonstrates that the "deemed to contain" provision, like its predecessor, was intended to clarify ambiguous bond terms. Nothing in the language of the statute indicates a different intent.

¶ 62 As with the 1941 amendment, the "deemed to contain" language serves as clarifying language where the actual language in the bond may be viewed as ambiguous. However, that clarifying language cannot be interpreted as altering the nature of the bond that has been procured. The clarifying language does not change the essential nature of the bond obtained by the general contractor, nor does it alter the fundamental way in which section 1 operates. The "deemed to contain" provision did not expand the nature of public construction bonds when it was adopted in 1941, and it should not be construed as working such a transformation now.

¶ 63 The purpose of the Bond Act is to protect subcontractors, as well as public bodies. See *Carroll Seating Co. v. Verdico*, 369 Ill. App. 3d 724, 727 (2006); *Aluma Systems, Inc. v. Frederick Quinn Corp.*, 206 Ill. App. 3d 828, 853-54 (1990); *Housing Authority*, 120 Ill. App. 2d at 241. Unfortunately, the majority's analysis does not advance that goal. Rather, today's decision dramatically alters the contractual burdens undertaken by a surety and a general contractor where a construction bond explicitly guarantees only one of the two obligations required by section 1. This decision also relieves a public body of the statutory duty expressly imposed by section 1, which requires it to ensure that both completion and payment are secured. Before taking this action, it would be prudent to ascertain whether section 1 can be construed in a manner that avoids such an absurd and unjust result. See *Township of Jubilee v. State*, 2011 IL 111447, ¶ 36 (recognizing that courts are obliged to construe statutes to avoid absurd, unreasonable, or unjust results). A logical and just result can be accomplished by reading the terms of the third paragraph as providing clarification of ambiguous bond language. To further the purpose of the Bond Act, a subcontractor should be permitted to bring suit against a public body for the failure to ensure an appropriate type of bond, as well as the failure to require any bond at all.

¶ 64 In sum, I would hold that the "deemed to contain" provision in the third paragraph of section 1 of the Bond Act is intended only to clarify potentially ambiguous language in a public construction bond. The majority's interpretation of that provision is contrary to the plain language of section 1, as well as the purpose and history of the Bond Act. The appellate court correctly resolved this issue, and its judgment should be affirmed.

¶ 65 JUSTICE BURKE joins in this dissent.