# Illinois Official Reports

## Appellate Court

---

### *Shannon Court Condominium Ass'n v. Armada Express, Inc.,*
### 2020 IL App (1st) 192341

---

| | |
|---|---|
| Appellate Court Caption | SHANNON COURT CONDOMINIUM ASSOCIATION, Plaintiff-Appellant, v. ARMADA EXPRESS, INC., an Illinois Corporation, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>No. 1-19-2341 |
| Filed | May 15, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 19-M3-004551; the Hon. Martin S. Agran, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Stuart A. Fullett, Jeffrey D. Swanson, and Benjamin D. Rios, of Fullett Swanson PC, of Lake Zurich, for appellant.<br><br>James B. Cavenagh, of Cavenagh, Garcia & Associates, Ltd., of Naperville, for appellee. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Justices Rochford and Delort concurred in the judgment and opinion. |

**OPINION**

¶ 1     The plaintiff, Shannon Court Condominium Association (Association), appeals orders of the circuit court (1) granting summary judgment in favor of the defendant, Armada Express, Inc. (Armada), on its two-count complaint for possession of condominium unit 101 at 5011 Valley Lane, Streamwood, Illinois (Unit 101), and monetary damages in the sum of $19,202.85 plus attorney fees and costs for breach of contract and (2) denying its motion for reconsideration. For the reasons that follow, we reverse both the summary judgment entered in favor of Armada and the order denying the Association's motion for reconsideration.

¶ 2     The facts giving rise to this litigation are not in dispute and are taken from the pleadings and the unrebutted affidavit of Nikola Nikolov, president of Armada, which was submitted in support of Armada's motion for summary judgment. On December 7, 2017, the Association filed an action in the circuit court of Cook County against Kimberly Voelker and Robert Voelker (collectively referred to as the Voelkers), the then owners of Unit 101, seeking both possession of Unit 101 and money damages by reason of their failure to pay condominium assessments for the unit (case No. 2017-M3-007851). On January 11, 2018, the Association obtained a judgment against the Voelkers for both possession of Unit 101 and $5272.19 in damages.

¶ 3     Pursuant to its judgment against the Voelkers, the Association took possession of Unit 101 and rented the unit, collecting $2625 in rental for the period from August 2018 through and inclusive of December 2018. Prior to renting Unit 101, the Association incurred expenses in making the unit suitable for rental.

¶ 4     On December 12, 2018, a judgment of foreclosure and sale of Unit 101 was entered by the circuit court in case No. 2018-CH-10999 in favor of Lakeview Loan Servicing against the Voelkers and other defendants. On January 29, 2019, Armada purchased Unit 101 at a judicial sale conducted pursuant to the December 12, 2018, judgment. The circuit court entered an order confirming the sale on February 20, 2019, and a judicial sale deed dated March 1, 2019, was issued to Armada. The deed was recorded on March 8, 2019.

¶ 5     On April 5, 2019, Armada paid the Association $1117 for the monthly assessments due on Unit 101 for the months of February, March, and April 2019. The payment included a $25 late charge for February 2019.

¶ 6     Along with a letter dated April 9, 2019, addressed to ABC Property Managers, Inc., the Association's managing agent, Armada's attorneys tendered a check for $59.04 payable to the Association in "full payment of all amounts due pursuant to the Illinois Condominium Property Act."

¶ 7     Armada received a "Notice and Demand for Possession of Unit 101" dated May 2, 2019, from the attorneys representing the Association, stating, *inter alia*, that, as of May 1, 2019, $19,122.85 was owed to the Association. Armada failed to pay the sums demanded, and as a consequence, the Association filed the instant action against Armada on June 17, 2019.

¶ 8     The Association's two-count complaint in this action sought both possession of Unit 101 and monetary damages for breach of contract. The complaint alleged that Armada, as owner of Unit 101, had failed to pay $19,202.85 for common expenses as required by the declaration of condominium and bylaws of the Shannon Court Condominium.

¶ 9        Armada filed its answer to the complaint, denying that it owed any amount to the Association and affirmatively stating that it had promptly paid "all that is due pursuant to law." Armada also filed a motion for summary judgment supported by the affidavit of its president, Nikola Nikolov, and the exhibits attached thereto. On August 20, 2019, the circuit court granted Armada's motion for summary judgment, finding that the $2625 in rents collected by the Association from the rental of Unit 101 were to be applied to six months of unpaid assessments in the amount of $2681.04 and that Armada tendered to the Association the $56.04 balance due pursuant to section 9(g)(4) of the Condominium Property Act (Act) (765 ILCS 605/9(g)(4) (West 2018)). On October 17, 2019, the circuit court denied the Association's motion for reconsideration. This appeal followed.

¶ 10       In urging reversal of the summary judgment entered in favor Armada, the Association argues that a genuine issue of fact exists on the question of the amount it was due, pursuant to section 9(g)(4) of the Act, from Armada as the purchaser of Unit 101 at a foreclosure sale. It contends that the circuit court erred (1) in its determination of the amount of attorney fees the Association incurred in case No. 2017-M3-007851 against the Voelkers when calculating the sums due from Armada under section 9(g)(4) of the Act, (2) in finding that it "could not recover the 'repair costs' included as part of the pre-foreclosure sale amounts being sought from [Armada] as the purchaser at the judicial foreclosure sale," and (3) in its application of the funds that it received from the rental of Unit 101.

¶ 11       This case comes to us on appeal from the entry of a summary judgment. Consequently, our review is *de novo*. *In re Estate of Hoover*, 155 Ill. 2d 402, 411 (1993). Summary judgment is to be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018); *Kolakowski v. Voris*, 83 Ill. 2d 388, 398 (1980). In ruling on a motion for summary judgment, the court must consider the affidavits, depositions, admissions, exhibits, and pleadings on file strictly against the movant and liberally in favor of the nonmoving party. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 131-32 (1992).

¶ 12       In resolving the issues raised by the Association in this appeal, we must construe several sections of the Act. In construing statutes, our primary objective is to ascertain and give effect to the intent of the legislature. *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 19. The language of a statute, given its plain and ordinary meaning, is the most reliable indication of legislative intent. *Id.* Each word, clause, and sentence of a statute must be given a reasonable construction, such that no term is rendered superfluous. *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 14. In determining the meaning of a statute, a court must consider the language in context of the entire statute. *Id.* When the language of a statute is clear and unambiguous, it must be applied as written without resort to aids of construction. *Id.* We review questions of statutory construction *de novo*. *Id.* ¶ 13.

¶ 13       Section 9(g)(1) of the Act states, in relevant part, that:

> "(1) If any unit owner shall fail or refuse to make any payment of the common expenses or the amount of any unpaid fine when due, the amount thereof together with any interest, late charges, reasonable attorney fees incurred enforcing the covenants of the condominium instruments *** shall constitute a lien on the interest of the unit owner in the property prior to all other liens and encumbrances, recorded or unrecorded ***." 765 ILCS 605/9(g)(1) (West 2018).

Section 9(g)(1) of the Act, by its plain language, creates a lien in favor of a condominium association upon the failure or refusal of a unit owner to pay common expense assessments. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 23. As a consequence, the Association possessed a lien against Unit 101 for any unpaid assessments, interest, and late charges owed by the Voelkers plus reasonable attorney fees incurred by the Association in its action against them.

¶ 14 Section 9(g)(3) of the Act provides that:

"(3) The purchaser of a condominium unit at a judicial foreclosure sale, or a mortgagee who receives title to a unit by deed in lieu of foreclosure or judgment by common law strict foreclosure or otherwise takes possession pursuant to court order under the Illinois Mortgage Foreclosure Law [(735 ILCS 5/15-1501 *et seq.* (West 2018))], shall have the duty to pay the unit's proportionate share of the common expenses for the unit assessed from and after the first day of the month after the date of the judicial foreclosure sale, delivery of the deed in lieu of foreclosure, entry of a judgment in common law strict foreclosure, or taking possession pursuant to such court order. Such payment confirms the extinguishment of any lien created pursuant to paragraph (1) or (2) of subsection (g) by virtue of the failure or refusal of a prior unit owner to make payment of common expenses, where the judicial foreclosure sale has been confirmed by order of the court, a deed in lieu thereof has been accepted by the lender, or a consent judgment has been entered by the court." 765 ILCS 605/9(g)(3) (West 2018).

¶ 15 In *1010 Lake Shore Ass'n*, 2015 IL 118372, ¶ 24, the supreme court held that the first sentence of section 9(g)(3) "plainly requires a foreclosure sale purchaser to pay common expense assessments beginning in the month following the foreclosure sale." The second sentence "provides an incentive for prompt payment of those postforeclosure sale assessments, stating '[s]uch payment confirms the extinguishment of any lien created' under subsection 9(g)(1) by the unit owner's failure to pay assessments." *Id.*

¶ 16 As noted earlier, Armada purchased Unit 101 at a foreclosure sale held on January 29, 2019. The circuit court in the foreclosure action entered an order confirming the sale on February 20, 2019, and a judicial sale deed dated March 1, 2019, was issued to Armada. On April 5, 2019, Armada paid the Association $1117 for the monthly assessments due on Unit 101 for the months of February (the month following the foreclosure sale at which it purchased the unit), March, and April 2019. The payment included a $25 late charge for February 2019. The payment was made 44 days after the sale was confirmed and 36 days after a deed to Unit 101 was issued to Armada.

¶ 17 The Association has made no argument that Armada's payment of the post-sale assessments was not "prompt," and the issue is, therefore, forfeited. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *Myers v. Kissner*, 149 Ill. 2d 1, 8 (1992). Forfeiture aside, we find that Armada's payment of the postsale assessments 44 days after the sale was confirmed and 36 days after a deed to the Unit 101 was issued to it was "prompt" as a matter of law. See *V&T Investment Corp. v. West Columbia Place Condominium Ass'n*, 2018 IL App (1st) 170436, ¶ 30.

¶ 18 Having found that Armada paid postsale assessments for Unit 101 for the period beginning in the month following the foreclosure sale, it follows that, pursuant to the plain language of section 9(g)(3) of the Act, the payment confirmed the extinguishment of any lien on Unit 101

in favor of the Association created under section 9(g)(1) of the Act by reason of the Voelkers' failure to pay assessments. *1010 Lake Shore Ass'n*, 2015 IL 118372, ¶ 24; *V&T Investment Corp.*, 2018 IL App (1st) 170436, ¶ 31.

¶ 19    However, in determining whether Armada was entitled to judgment as a matter of law, we must address the question of whether there exists a genuine factual issue on whether Armada's tender of $56.04 satisfied its obligation to the Association under section 9(g) of the Act. Section 9(g)(4) provides that

> "[t]he purchaser of a condominium unit at a judicial foreclosure sale, other than a mortgagee, who takes possession of a condominium unit pursuant to a court order *** shall have the duty to pay the proportionate share, if any, of the common expenses for the unit which would have become due in the absence of any assessment acceleration during the 6 months immediately preceding institution of an action to enforce the collection of assessments, and which remain unpaid by the owner during whose possession the assessments accrued. If the outstanding assessments are paid at any time during any action to enforce the collection of assessments, the purchaser shall have no obligation to pay any assessments which accrued before he or she acquired title." 765 ILCS 605/9(g)(4) (West 2018).

Section 9.2(b) of the Act provides that "[a]ny attorney's fees incurred by the Association arising out of a default by a unit owner, his tenant, invitee or guest in the performance of the provisions on the condominium instruments, rules and regulations or applicable statute or ordinance shall be added to, and deemed part of, his respective share of the common expense." *Id.* § 9.2(b).

¶ 20    The Association argues that the circuit court erroneously "ruled that an association is not entitled to collect attorney fees and costs incurred in an action to enforce the collection of assessments initiated against the pre-foreclosure condominium unit owner." However, that assertion is belied by the record. First, no such ruling by the circuit court is found in the record. Second, a simple calculation reflects that $272.04 for attorney fees is included within the $2681.04 that the circuit court found was equal to six months of unpaid assessments for Unit 101. The Association's accounts receivable register, a copy of which is attached to the Nikolov affidavit as an exhibit and which, according to the affidavit, was furnished by ABC Property Managers, the managing agent of the Shannon Court Condominium, reflects that, for the six-month period preceding the institution of case No. 2017-M3-007851 against the Voelkers, $2184 in common expense assessments charged to Unit 101 were not paid, $150 in late fees charged against the unit were not paid, a $75 penalty was not paid, and $272.04 for attorney fees was charged to Unit 101. The total of those charges is $2681.04, which included $272.04 for attorney fees. The issue in this case is not whether the circuit court erroneously ruled that the Association is not entitled to collect attorney fees incurred in its action against the Voelkers; clearly, the circuit court made no such ruling. Rather, the issue is whether the $272.04 in attorney fees included in the circuit court's calculation of $2681.04 in unpaid common expense assessments for Unit 101 is the total amount of attorney fees that the Association is entitled to recover from Armada.

¶ 21    Relying upon the provisions of section 9(g)(5) of the Act (*id.* § 9(g)(5)), the Association appears to argue that it is entitled to collect from Armada the total amount of attorney fees it incurred in its action against the Voelkers. We believe that its reliance upon section 9(g)(5) is misplaced.

¶ 22    Section 9(g)(5) provides, in relevant part, that

> "[t]he notice of sale of a condominium unit under subsection (c) of Section 15-1507 of the Code of Civil Procedure shall state that the purchaser of the unit other than a mortgagee shall pay the assessments and legal fees required by subdivisions (g)(1) and (g)(4) of Section 9 of this Act." *Id.* § 9(g)(5).

By its very terms, the statute is merely a notice provision intended to advise the purchaser of a condominium unit at a judicial sale conducted pursuant to a judgment of foreclosure and sale that it is required to pay both the assessments and legal fees due under sections 9(g)(1) and 9(g)(4) of the Act. Section 9(g)(5) of the Act grants a condominium association no greater rights or interest than it possessed under sections 9(g)(1) and 9(g)(4).

¶ 23    As noted earlier, section 9(g)(1) of the Act grants a condominium association a lien on the interest of the owner of a condominium unit for, among other things, reasonable attorney fees incurred by the association in enforcing the covenants of the condominium instruments and that the lien is prior to all other liens and encumbrances. Unless and until the purchaser of a condominium unit at a judicial sale complies with the provisions of section 9(g)(3) of the Act, a lien created pursuant to section 9(g)(1) remains enforceable by the condominium association. However, when, as in this case, the judicial sale purchaser complies with the provisions of section 9(g)(3) of the Act by paying the common expense assessments for the unit beginning in the month following the foreclosure sale, "any lien" created by section 9(g)(1) is extinguished. *Id.* § 9(g)(3); *1010 Lake Shore Ass'n*, 2015 IL 118372, ¶ 24. Once its section 9(g)(1) lien has been extinguished, a condominium association's only right to recover payment for preforeclosure expenses from a nonmortgagee purchaser of a condominium unit at a foreclosure sale is pursuant to section 9(g)(4) of the Act. Our conclusion in this regard is based upon the clear and unambiguous language of the Act, reading section 9(g)(1), (3), (4), and (5) in harmony such that no section is rendered superfluous or inoperative. *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 458-59 (2002).

¶ 24    Having determined that, in this case, the only payment for preforeclosure expenses that the Association was entitled to recover from Armada was pursuant to section 9(g)(4) of the Act, we must still address the question of the existence of a genuine factual issue as to whether Armada's tender of $56.04 satisfied its obligation to the Association under that statute.

¶ 25    When read in conjunction, the plain and unambiguous language of sections 9(g)(4) and 9.2(b) of the Act obligated Armada to pay the Association the unpaid common expenses for Unit 101 for the six-month period preceding the institution of its action against the Voelkers, which sum includes the attorney fees "incurred" by the Association arising out of the Voelkers' default in the payment of monthly assessments for Unit 101. The relevant six-month period in this case was from June 7, 2017, through December 7, 2017, the date that the Association filed its action against the Voelkers. Armada does not contest the proposition that, pursuant to section 9.2(b) of the Act, the common expenses due for Unit 101 for the relevant six-month period includes the attorney fees incurred by the Association during that six-month period that arose out of the Voelker's default in the payment of common expense. Armada argues that, as the circuit court found, its tender of $56.04 satisfied all sums due to the Association pursuant to section 9(g)(4) of the Act, which included attorney fees. It appears that in calculating the common expenses for Unit 101 for the relevant six-month period, both Armada and the circuit court determined that only the $272.04 of attorney fees paid by the Association during that period is to be included as part of the common expenses. However, the plain and unambiguous

language of section 9.2(b) provides that the attorney fees "incurred" by a condominium association arising out of a default by a unit owner are "added to, and deemed part of, [the unit owner's] share of the common expense." 765 ILCS 605/9.2(b) (West 2018). To "incur" is not synonymous with to "pay." The term "incur" is defined as "[t]o suffer or bring on oneself a liability or expense." Black's Law Dictionary (11th ed. 2019). And when the evidentiary material in the record is construed strictly against Armada and liberally in favor of the Association, as we must (see *Outboard Marine Corp.*, 154 Ill. 2d at 131-32), it appears that, at a minimum, $1242.19 in attorney fees that arose out of the Voelkers' default in the payment of common expenses for Unit 101 was "incurred" by the Association during the six-month period preceding the institution of the action against them.

¶ 26    The attachment to a letter from the Association's attorneys to Armada's attorneys dated May 20, 2019, which was attached as an exhibit to Nikilov's affidavit, reflects that the Association was charged attorney fees for work done prior to the institution of its action against the Voelkers, consisting of $272.04 for preparation of a Notice and Demand for Possession and an additional $970.15 for preparation of the action against the Voelkers. According to the Association's accounts receivable register, the $272.04 was paid during the six-month period preceding the institution of the action against the Voelkers, whereas the $970.15 was paid on December 12, 2017, five days after the institution of that action. Although the $970.15 was paid after the action against the Voelkers was filed, those attorney fees were, nonetheless, incurred prior to the institution of the action. Having been so incurred, the $970.15 in attorney fees paid for preparation of the action against the Voelkers is, pursuant to section 9.2(b) of the Act, deemed part of the common expenses for Unit 101 for the six-month period preceding the institution of that action. As a consequence, the gross amount of unpaid assessments for Unit 101 for the six-month period preceding the institution of the Association's action against the Voelkers exceeded the $2681.04 as found by the circuit court by a minimum of $970.15. If we assume for the sake of analysis only that, as the circuit court found, all $2625 which the Association received in rent for Unit 101 is to be applied to the six months of unpaid assessments for the unit, the $56.04 that Armada tendered was not the balance due to the Association under section 9(g)(4) of the Act. We conclude, therefore, that Armada was not entitled to judgment as a matter of law, and the summary judgment entered in its favor must be reversed. Although our conclusion in this regard is sufficient to support a reversal, we elect to address several other issues raised by the Association in this appeal, as those issues will most certainly arise on remand.

¶ 27    The Association argues that it is entitled to recover from Armada the costs it incurred in the repair of Unit 101 after it took possession of the unit pursuant to the judgment entered in its action against the Voelkers. In support of the argument, the Association again relies upon section 9(g)(5) of the Act. However, having rejected the same argument in our analysis of a condominium association's right to recover attorney fees from the purchaser of a condominium unit at a foreclosure sale, we also reject the argument as it relates to the right to recover repair costs for the same reasons. After the extinguishment of the Association's section 9(g)(1) lien, the only pre-foreclosure expenses that it was entitled to recover from Armada are the sums provided for in section 9(g)(4) of the Act, namely, the common expenses for the unit for the six-month period immediately preceding the institution of the Association's action against the Voelkers. As the costs for the repair of Unit 101 were incurred by the Association after the institution of its action against the Voelkers, those costs are not part of the common expenses

for the unit for the six-month period immediately preceding the institution of that action and, therefore, are not recoverable from Armada under section 9(g)(4) of the Act.

¶ 28    Finally, the Association argues that the circuit court erred in applying the amount of the rents that it collected from the rental of Unit 101 only to common expenses for the six-month period immediately preceding the institution of its action against the Voelkers. It contends that the application of rental income received by a condominium association is not limited to reducing the six months of common expenses referenced in section 9(g)(4) of the Act but must be applied pursuant to section 9-111.1 of the Code of Civil Procedure (Code) (735 ILCS 5/9-111.1 (West 2018)). We agree.

¶ 29    Section 9-111.1 of the Code provides, in relevant part, that

"[u]pon the entry of an eviction order in favor of a board of managers under the Condominium Property Act, as provided in section 9-111 of this Act, and upon delivery of possession of the premises by the sheriff or other authorized official to the board of managers pursuant to execution upon the order, the board of managers shall have the right and authority, *** but not the obligation, to lease the unit to a *bona fide* tenant (whether the tenant is in occupancy or not) pursuant to a written lease for a term which may commence at any time within 8 months after the month in which the date of expiration of the stay of the order occurs. The term may not exceed 13 months from the date of commencement of the lease. *** The board of managers shall first apply all rental income to assessments and other charges sued upon in the eviction action plus statutory interest on a monetary judgment, if any, attorneys' fees, and court costs incurred; and then to other expenses lawfully agreed upon (including late charges), any fines and reasonable expenses necessary to make the unit rentable, and lastly to assessments accrued thereafter until assessments are current. Any surplus shall be remitted to the unit owner." *Id.*

¶ 30    The plain and unambiguous language of the statute specifies the manner in which the income earned by a condominium association from the rental of a condominium unit possessed by it pursuant to an eviction order is to be applied. In this case, the Association took possession of Unit 101 pursuant to the judgment entered in its action against the Voelkers and thereafter rented the unit, collecting $2625 in rent for the period from August 2018 through and inclusive of December 2018. On remand, the rents received by the Association must, pursuant to the provisions of section 9-111.1 of the Code, be applied first to the assessments sued upon in its action against the Voelkers, plus statutory interest on the $5272.19 judgment rendered against the Voelkers, and the attorney fees and court costs incurred by the Association in that action.

¶ 31    Based upon the foregoing analysis, we reverse both the summary judgment entered in favor of Armada and the denial of the Association's motion to reconsider, and we remand this matter to the circuit court for further proceedings consistent with this opinion.

¶ 32    Reversed and remanded.